**Thomas EAGLE, Petitioner,**

v.

**ARMCO, INCORPORATION; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 90–1035.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1990.

Decided Sept. 3, 1991.

William C. Garrett, Gassaway, W. Va., for petitioner.

Anthony Joseph Cicconi, Shaffer & Shaffer, Madison, W. Va., argued (George D. Blizzard, II, on brief), for respondents.

Before WIDENER and SPROUSE, Circuit Judges, and MICHAEL, District Judge for the Western District of Virginia, sitting by designation.

## OPINION

WIDENER, Circuit Judge:

Thomas Eagle petitions for review of a decision by the Benefits Review Board affirming the denial of his claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.* We vacate the order of the Board and remand for the award of benefits.

Eagle filed a claim for black lung benefits on January 30, 1981. His case was subsequently referred to an Administrative Law Judge (ALJ), who held a formal hearing on December 10, 1986. The ALJ found that Eagle had worked as a coal miner for over twenty-four years and was afflicted with pneumoconiosis. The ALJ recognized that because Eagle had been employed as a miner in excess of fifteen years and had applied for benefits prior to January 1, 1982, he was entitled to a presumption that his pneumoconiosis arose out of his coal mine employment and totally disabled him, provided that he could establish total disability in accordance with 20 C.F.R. § 718.-204. See 20 C.F.R. § 718.305. Concluding that Eagle had failed to establish total disability, the ALJ issued a decision and order denying his claim for benefits. This denial was affirmed by the Benefits Review Board on March 30, 1990.

The sole issue raised by Eagle in this petition for review is whether the Benefits Review Board erred in finding that there was substantial evidence to support the ALJ's conclusion that Eagle had failed to establish total disability.

Eagle has sought to demonstrate his disability by the method set out in 20 C.F.R. § 718.204(c)(4), which provides:

> ... total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b) in this section....

The employment described in paragraph (b) of this section is the claimant's "usual coal mine work" and "gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time." 20 C.F.R. § 718.-204(b)(1) & (2).

Eagle presented the medical opinion of Dr. Donald L. Rasmussen, a specialist in

the field of internal medicine and pulmonary diseases, who personally examined the miner on three occasions. Dr. Rasmussen, in deposition testimony, testified that Eagle had communicated to a member of Dr. Rasmussen's staff the mine jobs he had performed when interviewed by the staff member. Based upon his understanding that Eagle's usual mine work required him to perform heavy physical labor and the results of his testing of Eagle, Dr. Rasmussen concluded that Eagle was "totally disabled for resuming his former coal mine employment...."

The employer presented the medical opinion of Dr. John M. Daniel, a family practice physician who never examined Eagle.[1] Dr. Daniel made his findings solely on the basis of reports arising out of an earlier examination conducted by one of his associates. He found that Eagle was afflicted with chronic obstructive lung disease and occupational pneumoconiosis, but concluded that there was "no evidence of pulmonary dysfunction."[2] Dr. Daniel further stated that Eagle "should be able to tolerate the usual physical activities required of a coal miner," but admitted that he had "no idea" what type of work Eagle usually performed in the mines.

As indicated, the ALJ concluded that Eagle had failed to establish disability under 20 C.F.R. § 718.204. The ALJ based this conclusion on his decision to credit the opinion of Dr. Daniel and discredit that of Dr. Rasmussen. Dr. Daniel's opinion, he stated, was "most compatible with the ventilatory and blood gas studies contained in the record, ..." Dr. Rasmussen, on the other hand, was said to have been "equivocal" by virtue of his statement at one place in his deposition that Eagle was "probably" totally disabled. In addition, the ALJ discredited Dr. Rasmussen's opinion because the doctor had used the word "minimal" in describing Eagle's pulmonary impairment and had never been given a description of Eagle's actual jobs in the mines.

■ Our review of the record indicates that the ALJ erred in two respects. The first of these errors concerns the ALJ's determination of the nature of the coal mine work performed by Eagle. In this regard, the ALJ found that Eagle had last worked as a "trackman," a job that the ALJ described as involving "jacking derailed coal cars back on to their tracks" as its "most arduous activity." This description is contrary to the evidence in the record concerning the exact nature of Eagle's work in the mines. The Director and the employer presented no evidence concerning Eagle's usual coal mine work. Eagle, however, testified that he had worked as a trackman for six or seven years, and stated, in contrast to the ALJ's finding, that the job consisted of laying and maintaining underground track. With the help of only one or two co-workers, Eagle explained, he had been required to lift and handle thirty to thirty-three foot long sections of steel rail, with the rails weighing at least sixty pounds for every three feet. In a day, as many as twenty-two such rails would be laid. Eagle further stated that as a trackman, he was required to handle manually oak cross-ties with a length of nine feet. In view of the evidence in the

1. We note that our prior decisions have established that "the testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir.1984); see also *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir.1990) ("[T]he conclusion of a non-examining physician is entitled to less weight than the conclusion of an examining physician."). We have declined, however, "to say that the opinion of a doctor who has not examined or treated the claimant is never entitled to any weight." *Hayes v. Gardner*, 376 F.2d 517, 521 n. 1 (4th Cir.1967).

2. In deposition testimony, Dr. Daniel asserted his view that breathing coal mine dust does not cause chronic obstructive lung disease. He stated that inhalation of coal dust "is not a cause per se of Chronic Obstructive Lung Disease, it can aggravate Chronic Obstructive Lung Disease," and insisted that "[n]on-smokers without evidence of asthma or infectious processes show no evidence of obstruction from coal mine employment...." For the purposes of consideration in black lung cases, this opinion must be considered bizarre in view of a Congress' explicit finding to the contrary. See 30 U.S.C. §§ 901(a), 902(b).

record, we conclude that the ALJ misstated both the nature and the exertional requirements of Eagle's work as a trackman and we further find that there is no substantial evidence to support his decision.

Apparently recognizing that the ALJ's findings as to Eagle's work as a trackman were without foundation in the evidence, the Benefits Review Board conjectured that the ALJ had actually intended to use the term "boom operator" instead of "trackman." [3] Assuming, without deciding, this to be so, we still believe that the ALJ's findings are not supported by the evidence. Eagle testified that within his final year of mine employment he had worked as a boom operator, a job he described as requiring him to drag and carry by hand a three- to four-inch steel cable for a distance of three hundred feet. The job also entailed, at least once a shift, returning derailed cars to the track. To accomplish this task, Eagle by himself manually operated a fifteen to twenty pound jack with a thirty-inch long jack stick in order to raise completely each car and put it back on the track. His testimony indicated that this procedure was performed on both unloaded and loaded cars, with a loaded car containing approximately five tons of coal plus the weight of the car itself. The ALJ's description, as previously quoted, made no reference to the steel-cable carrying function of the boom operator's work and the ALJ gave no explanation for this omission.[4]

In view of these circumstances, we are of the opinion that the ALJ's findings of fact concerning Eagle's usual or last work in the mines were not supported by substantial evidence.

[#] A second error committed by the ALJ involved his reliance on Dr. Daniel's opinion that the claimant could continue to perform usual coal mining activities. In affirming such reliance on the part of the ALJ, the Benefits Review Board stated that Dr. Daniel's report, which concluded that Eagle "should be able to tolerate the usual activities required of a coal miner," demonstrated "the non-existence of any disability." The Board, it appears, looked upon Dr. Daniel's finding that Eagle was not prevented by his condition from performing any coal mine work as if such a finding necessarily subsumed Eagle's particular job in the mines; accurate knowledge of Eagle's actual mine work was therefore deemed unnecessary.

We cannot agree with the position of the Benefits Review Board. We have only recently held that because section 718.-204(b)(1) defines total disability in terms of a miner's "usual coal mine work," the relevant inquiry "does not relate to coal mine activities in the generic sense, but to the coal mine work that the involved black lung claimant was performing at the time of his disability." *Walker v. DOWCP*, 927 F.2d 181, 183 (4th Cir.1991). Accordingly, a physician who asserts that a claimant is capable of performing assigned duties "should state his knowledge of the physical efforts required and relate them to the miner's impairment." *Walker*, 927 F.2d at 184; cf. *Adkins v. U.S. Dep't of Labor, Office of Workers' Comp.*, 824 F.2d 287, 290 (4th Cir.1987); *Sykes v. DOWCP*, 812 F.2d 890, 893 (4th Cir.1987). Dr. Daniel, however, did not relate his findings to Eagle's duties in the mines or the exertional requirements thereof. Indeed, by his own admission, Daniel had "no idea what [Eagle] did" in the mines. We therefore reject

---

**3.** The Board also advanced a second rationale to deal with the erroneous findings of the ALJ concerning Eagle's mine work. The Board asserted that any such errors were "harmless." This conclusion was based on the view that by relying on the opinion of Dr. Daniel, the ALJ could have found Eagle able to perform his usual mine work without ever having accurate knowledge of the job Eagle actually performed in the mines. For the reasons discussed *infra* in our discussion of Dr. Daniel's opinion, we reject this reasoning.

**4.** The ALJ directly examined Eagle on this point during the hearing:

Q: Let me ask you, during your last year as a miner, what was the hardest thing you had to do, what was the most difficult job?
A: The last year, the most difficult job I had, sir, was jacking the cars on the track *and pulling the rope to move the cars with.*
(Emphasis added.)

the Board's conclusion that "the administrative law judge could properly rely on Dr. Daniel's opinion to find that total disability had not been demonstrated...." Dr. Daniel's opinion was critically flawed and does not amount to substantial evidence supporting the ALJ's denial of benefits to Eagle.

In view of the ALJ's erroneous findings concerning Eagle's mine employment, which were either approved by the Board or found harmless, and his unwarranted reliance on the opinion of Dr. Daniel, which was approved by the Board, we conclude that the denial of benefits to the claimant was not based on substantial evidence.

We have examined the record in this case with some care and do not find any creditable contradiction of the deposition of Dr. Rasmussen, particularly the conclusion thereof, in which Dr. Rasmussen, in arriving at his conclusion, had correctly assumed that Eagle's usual coal mining employment had been heavy work as opposed to moderate. Dr. Rasmussen was of opinion that Eagle would be incapable of performing heavy work loads. We think this was a reasoned medical judgment based on medically acceptable clinical and laboratory diagnostic techniques with relation to Eagle's pulmonary condition.

That being the case, and Eagle having filed his claim for black lung benefits some ten years ago, we are of opinion that the processing of this claim has gone on long enough.

The order of the Benefits Review Board denying benefits is vacated, and the case is remanded to the Benefits Review Board, which will direct the award of appropriate benefits to Eagle.

VACATED AND REMANDED WITH INSTRUCTIONS.