**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 22-1741**

─────────

ISLAND CREEK COAL COMPANY,

        Petitioner,

   v.

JERRY L. BLANKENSHIP; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF
LABOR,

        Respondents.

─────────

On Petition for Review of an Order of the Benefits Review Board. (21-0186 BLA)

─────────

Argued:  September 24, 2024                Decided:  December 17, 2024

─────────

Before AGEE, RUSHING and BENJAMIN, Circuit Judges.

─────────

Petition for review granted; order vacated and remanded by published opinion. Judge Agee wrote the opinion in which Judge Rushing and Judge Benjamin joined.

─────────

John R. Sigmond, PENN, STUART & ESKRIDGE, Bristol, Tennessee, for Petitioner. Brad Anthony Austin, WOLFE, WILLIAMS & AUSTIN, Norton, Virginia, for Respondent.

─────────

AGEE, Circuit Judge:

Jerry L. Blankenship applied for living miner benefits under the Black Lung Benefits Act ("the Act"), 30 U.S.C. §§ 901–44, claiming that he suffered from coal dust-induced pneumoconiosis as a result of his prior work as a coal miner and was totally disabled. An Administrative Law Judge ("ALJ") found that Blankenship was entitled to a rebuttable presumption that he was totally disabled due to pneumoconiosis under 30 U.S.C. § 921(c)(4) and that his former employer, Island Creek Coal Company ("Island Creek"), failed to rebut that presumption.[1] Blankenship was then awarded benefits. The Benefits Review Board (the "Board") affirmed the ALJ's decision.

Island Creek now brings a petition for review. It argues, *inter alia*, that the ALJ improperly transposed the presence of the pneumoconiosis and disability causation analyses into the separate total disability analysis. Moreover, Island Creek contends that the ALJ failed to adequately explain his decision to credit the opinions of Blankenship's medical experts. We agree with Island Creek and grant the petition for review, vacate the decision of the Board, and remand with directions to return Blankenship's case to the ALJ to reevaluate his claim in light of this opinion.

---

[1] The rebuttable presumption under 30 U.S.C. § 921(c)(4) was enacted in 1972, eliminated in 1981, and then restored in 2010. *See* Black Lung Benefits Act of 1972, Pub. L. No. 92-303, § 4(c), 86 Stat. 150, 154 (1972); Black Lung Revenue Act of 1981, Pub. L. No. 97-119, § 202(b)(1), 95 Stat. 1635, 1643 (1981); Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010).

I.

We begin with a brief discussion of the statutory and regulatory framework, which provides context for the arguments in this case. The Act creates an adversarial administrative procedure designed to determine whether miners qualify for compensatory benefits because they suffer from coal dust-related pulmonary injuries, referred to as pneumoconiosis, and are disabled as a result. *See* 30 U.S.C. §§ 901–944. The implementing regulations define pneumoconiosis as a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201(a).

To obtain black lung benefits under the Act, a claimant must prove by a preponderance of the evidence that: "(1) he has [clinical or legal] pneumoconiosis; (2) the pneumoconiosis arose out of his coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) [disability causation, i.e., that] pneumoconiosis is a contributing cause to his total respiratory disability." *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 529 (4th Cir. 1998); *see* 20 C.F.R. § 718.201(a) (defining clinical and legal pneumoconiosis).

However, "[t]he existence and causes of pneumoconiosis are difficult to determine, and Congress accordingly has established a number of evidentiary presumptions to assist miners in proving their claims." *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 501 (4th Cir. 2015) (cleaned up). "Among them is the fifteen-year presumption at issue in this case," which is "expressly intended to relax the often insurmountable burden of proving a black lung claim for the special class of miners with [fifteen] years [of] experience who are

3

disabled by a respiratory or pulmonary impairment." *Id.* (cleaned up). To that end, § 921(c)(4) provides, in relevant part:

> [I]f a miner was employed for fifteen years or more in one or more underground coal mines, . . . and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis[.]

30 U.S.C. § 921(c)(4).

Thus, "when a miner proves [fifteen] years of coal mine employment and . . . the total disability element, a rebuttable presumption arises that the miner is totally disabled due to pneumoconiosis," i.e., that he is entitled to benefits under the Act. *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 555 (4th Cir. 2013). In other words, upon a showing that a miner has the requisite coal mine employment and is totally disabled, he presumptively satisfies the following black lung claim elements: (1) "the existence of pneumoconiosis," (2) that "pneumoconiosis arose out of coal mine employment," and (4) disability causation, i.e., that "pneumoconiosis caused the total disability". *Id.* at 555.

But, to trigger the presumption in the first place, the miner must come forward with evidence to establish the third element of his claim: that he has a totally disabling respiratory or pulmonary condition. To establish such an impairment, a miner must show that the "impairment . . ., standing alone, prevents or prevented the miner . . . [f]rom performing his . . . usual coal mine work" and comparable work. 20 C.F.R. § 718.204(b)(1). He can satisfy that burden through the submission of any of four types of medical evidence: (1) qualifying pulmonary function tests ("PFTs"), (2) qualifying arterial blood-gas studies ("ABGSs"), (3) a showing that he has pneumoconiosis and suffers from cor pulmonale

4

with right-sided congestive heart failure, or (4) well-documented and well-reasoned physician's opinions concluding that the miner's respiratory or pulmonary condition prevents him from engaging in his last mining job and similar work.[2] *Id.* § 718.204(b)(2).

"Once the presumption is triggered, the burden shifts to the employer to demonstrate that the miner is not in fact eligible for benefits." *W. Va. CWP Fund v. DOWCP*, 880 F.3d 691, 695 (4th Cir. 2018). The employer may rebut the fifteen-year presumption by establishing either (1) that the miner does not have legal and clinical pneumoconiosis arising from coal mine employment, or (2) that no part of the miner's respiratory or pulmonary impairment was caused by pneumoconiosis. 20 C.F.R. § 718.305(d)(1).

## II.

Blankenship worked in the coal industry for over twenty-eight years. For the first sixteen years, he worked underground. During the last twelve years of his career, he worked mostly aboveground as a fine coal operator in a preparation cleaning plant at an underground coal mine site. In both roles, his work required heavy lifting and frequent trips up and down eight flights of stairs. Blankenship did not notice any breathing difficulties until he left coal mine employment in 1998. He has never smoked, but he has been treated for coronary artery disease and obstructive sleep apnea.

---

[2] PFTs and ABGSs produce numeric values and the Department of Labor has promulgated tables identifying which values indicate that a miner is totally disabled. *See* 20 C.F.R. § 718.204(b)(2). When the values produced by a PFT or ABGS meet the values listed in those tables a miner is totally disabled, and the test is referred to as "qualifying."

In January 2017, Blankenship filed this claim for living miner benefits.[3] His case was referred to a claims manager, who found that Blankenship was entitled to benefits due to his prior coal employment. Island Creek disputed the award and sought administrative review before an ALJ.

Based on Blankenship's nearly twenty-eight years of coal mine employment, the ALJ found that he was eligible to invoke the fifteen-year presumption upon a showing of total disability. As relevant here, the parties introduced the following medical evidence of Blankenship's pulmonary condition: (1) the results from five non-qualifying PFTs; (2) the results from five ABGSs, only one of which produced a qualifying result; and (3) conflicting medical opinion reports from four physicians: Dr. Elie Nader, Dr. Roger McSharry, Dr. Michael Green, and Dr. Dale Sargent.

The physicians' medical opinions were evenly split. Drs. Nader and Green concluded that Blankenship had pneumoconiosis and was totally disabled based on, as relevant here, his lone qualifying ABGS from June 2017, lengthy coal mine employment, and subjective symptoms. In contrast, Drs. McSharry and Sargent concluded that Blankenship did not have pneumoconiosis and was not totally disabled based on his five non-qualifying PFTs and four non-qualifying ABGSs, which were administered after June 2017.

---

[3] Blankenship testified that he first requested black lung benefits in 2011, but that his request was "denied." J.A. 95.

The ALJ found all of the medical opinions "well-qualified," but granted the opinions of Drs. Nader and Green "greater evidentiary weight than the opinions of Dr. Sargent and Dr. McSharry." J.A. 69. In awarding less weight to Drs. Sargent and McSharry, the ALJ focused on their findings that Blankenship did not have pneumoconiosis, their reliance on his non-qualifying PFTs and ABGSs, their failure to consider the possibility that coal dust exposure caused his "respiratory problems," and their failure to discuss the physical demands of his coal mine employment. J.A. 69–70.

The ALJ concluded that Blankenship established total disability based on the medical opinions of Drs. Nader and Green and was thus entitled to the fifteen-year presumption. Of note, the ALJ also found that Blankenship failed to establish total disability based on his PFTs or cor pulmonale. Regarding the ABGSs, the ALJ explained: "Only one of the [ABGSs] is qualifying, and four more recent studies are not. For that reason, I conclude the [ABGSs], standing alone, do not establish total disability." J.A. 65.

The ALJ only briefly explained that Island Creek failed to carry its burden to rebut the fifteen-year presumption. To do so the ALJ simply reiterated his previously articulated reasons for finding Blankenship entitled to the fifteen-year presumption, i.e., that neither Dr. McSharry nor Dr. Sargent identified a cause of Blankenship's respiratory impairment and that their conclusions were consistent with a finding of pneumoconiosis.

On appeal, the Board affirmed the ALJ's decision. The Board rejected Island Creek's argument that the ALJ did not explain the basis for crediting the medical opinions of Drs. Nader and Green, which it contended meant the ALJ's decision failed to comport with its duty of explanation under the Administrative Procedure Act ("APA"). The Board

7

found that the ALJ's duty of explanation was satisfied based on his summary of the medical opinions and his finding that Drs. Nader and Green discussed Blankenship's ability to perform his previous coal mine employment.

Island Creek also argued that the ALJ improperly shifted Blankenship's burden to prove total disability and required Island Creek to disprove total disability. The Board rejected this argument by concluding that the ALJ's finding that the medical opinions of Drs. Nader and Green were "well-reasoned and well-supported" evidenced that the ALJ properly placed the burden of proof on Blankenship.

The Board thus affirmed the ALJ's findings that Blankenship was entitled to the fifteen-year presumption and that Island Creek failed to rebut that presumption.

Following the Board's unfavorable decision, Island Creek timely filed a petition for review. We have jurisdiction under 33 U.S.C. § 921(c).

III.

Our review of a decision awarding black lung benefits is "limited." *Harman Mining Co. v. DOWCP*, 678 F.3d 305, 310 (4th Cir. 2012) (citation omitted). We evaluate the Board's legal conclusions de novo but defer to the ALJ's factual findings if supported by substantial evidence. *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 252 (4th Cir. 2016) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938).

8

That said, our deference to an ALJ's factual findings is not unlimited. "In determining whether substantial evidence supports the ALJ's factual determinations, we must first address whether all of the relevant evidence has been analyzed[.]" *Milburn Colliery Co.*, 138 F.3d at 528 (citing *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439 (4th Cir. 1997)). When the Court finds that "an ALJ has incorrectly weighed the evidence or failed to account for relevant record evidence, deference is not warranted and remand is frequently required." *Addison*, 831 F.3d at 253.

And "as a condition to appellate review," under the APA, the ALJ has a duty to "adequately explain why he credited certain evidence and discredited other evidence." *Id.* (citation omitted). Specifically, the APA requires that the ALJ include a statement of "findings and conclusions, and the reasons or basis therefor, on all material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). Even so, an ALJ's duty of explanation is "not intended to be a mandate for administrative verbosity." *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999). "If we understand what the ALJ did and why he did it, we, and the APA, are satisfied." *Lane Hollow Coal Co. v. DOWCP*, 137 F.3d 799, 803 (4th Cir. 1998).

## IV.

### A.

Island Creek contends that the ALJ improperly considered the presence of pneumoconiosis and the causation of Blankenship's respiratory or pulmonary impairment in concluding he was totally disabled. We agree.

9

As explained above, the fifteen-year presumption applies when "a miner was employed for fifteen years or more in one or more underground coal mines, and . . . if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment." 30 U.S.C. § 921(c)(4). And to demonstrate the existence of a totally disabling respiratory or pulmonary impairment, a miner must show that his "impairment . . ., standing alone, prevents or prevented the miner . . . [f]rom performing his . . . usual coal mine work" and comparable work. 20 C.F.R. § 718.204(b)(1).

We have previously explained that an ALJ cannot rely upon the presence of pneumoconiosis alone to conclude that a miner is totally disabled. In *Milburn Colliery Co.*, we considered whether the ALJ's reliance on x-ray evidence was "a sufficient basis for concluding [that the miner] was disabled due to a respiratory impairment." 138 F.3d at 533. We held that the ALJ's reliance was misplaced; although "all of the physicians who submitted reports agreed that x-rays revealed [the miner] had pneumoconiosis, [] the *mere presence of pneumoconiosis is not synonymous with a totally disabling respiratory condition." Id.* at 534 (emphasis added). Our precedent aligns with prior Board decisions recognizing that a finding of pneumoconiosis is totally separate from a finding of total disability. *See, e.g.*, *Deskins v. Island Creek Coal Co.*, BRB 16-0068 BLA, 2016 WL 8260791, at *2 n.8 (BRB Nov. 29, 2016) (per curiam) (finding that the ALJ conflated "two distinct issues": "the issue of total disability [and] the issue of the existence of pneumoconiosis").

From this recognition that the total disability inquiry is a discrete analysis, it follows that, as Board precedent indicates, "the total disability inquiry is [also] distinct from the

10

disability causation inquiry." *Consol. Coal Co. v. DOWCP*, 911 F.3d 824, 841 (7th Cir. 2018) (analyzing Board precedent); *see, e.g.*, *Egnor v. E. Assoc. Coal Co.*, BRB 21-0224 BLA, 2023 WL 2182666, at *5 (BRB Jan. 27, 2023) (per curiam) ("[T]he issues of total disability and disability causation . . . are distinct inquiries."). Consistent with that Board precedent, the Seventh Circuit has held that in evaluating total disability, "the ALJ should not let medical opinion evidence about the cause of [a totally disabling] respiratory or pulmonary impairment affect the analysis." *Consol. Coal Co.*, 911 F.3d at 842. We agree with the Board and the Seventh Circuit that the two analyses should not be conflated. Thus, we must consider whether the ALJ relied on such improper considerations in making the total disability analysis.

Here, we find that the ALJ transposed the analysis and improperly relied on the medical opinions' discussions of pneumoconiosis and disability causation to conclude that Blankenship was, in fact, totally disabled. First, the ALJ improperly treated the presence of pneumoconiosis as establishing the presence of total disability. Within his discussion of whether Blankenship was totally disabled, the ALJ found Dr. McSharry's and Dr. Sargent's conclusions that Blankenship did not have pneumoconiosis unpersuasive and, as a result, discredited their finding that he was not totally disabled. J.A. 69 (discrediting Dr. McSharry's findings regarding total disability in part because his findings do "not support a conclusion that pneumoconiosis is absent"). Indeed, the ALJ discredited Dr. Sargent's medical opinion because he opined that Blankenship did not have pneumoconiosis but his findings were, in the ALJ's view, "consistent with the presence of pneumoconiosis." J.A. 69. Based in part on his view that Drs. McSharry and Sargent improperly diagnosed

11

Blankenship as not having pneumoconiosis, the ALJ held that Blankenship thus showed, "by a preponderance of the evidence, . . . that he has a totally-disabling respiratory or pulmonary impairment." J.A. 71.

The ALJ apparently assumed that, because he found the medical opinion evidence to be consistent with the presence of pneumoconiosis, that evidence was also conclusive that Blankenship was totally disabled. In other words, the ALJ found that Blankenship established "a totally disabling respiratory condition" by virtue of "the mere presence of pneumoconiosis." *Milburn Colliery Co.*, 138 F.3d at 534. That reasoning reflects a misunderstanding of the total disability inquiry, which concerns only the miner's ability to perform his previous coal mine employment and comparable work. *See* 20 C.F.R. 718.204(b)(1). Consequently, the ALJ failed to conduct "an appropriate analysis of the evidence to support his conclusion" that Blankenship was totally disabled by transposing the pneumoconiosis analysis into the total disability analysis. *Milburn Colliery Co.*, 138 F.3d at 529.

We similarly find that the ALJ erred by considering the cause of Blankenship's impairment in finding that he was totally disabled because these two elements of the claim are also separate inquiries. For example, the ALJ discredited the medical opinions of Drs. McSharry and Sargent in part because they did not "acknowledge[] the possibility that coal dust inhalation may have contributed to [] Blankenship's respiratory problems" in finding that Blankenship did not have pneumoconiosis and was not totally disabled. J.A. 70. According to the ALJ, "[i]f [Drs. McSharry and Sargent] are willing to postulate transient phenomena as a cause of his abnormal or 'nearly normal' blood-gas diffusion issues, in

12

fairness they should also consider coal dust exposure as a possible cause." J.A. 70. However, the benchmark for total disability is not whether coal dust exposure caused Blankenship's impairment; it is his ability to perform his usual coal work and comparable work. Clearly, the ALJ improperly "let medical opinion evidence about the cause of [Blankenship's] respiratory or pulmonary impairment affect [his total disability] analysis." *Consol. Coal Co.*, 911 F.3d at 842.

The Board's decision in *Yates v. Island Creek Coal Company* is particularly instructive to demonstrating how the ALJ erred. BRB No. 21-0204 BLA, 2023 WL 2182665 (BRB Jan. 25, 2023). There, the Board vacated and remanded a decision by the same ALJ discrediting the medical opinions of the same two physicians in part because he had improperly conflated the total disability inquiry with distinct elements of a black lung benefits claim: the presence of pneumoconiosis and disability causation. *Id.* at *5. In response to the ALJ's consideration of pneumoconiosis in evaluating Yates' total disability, the Board explained that "the issue of whether the miner suffered from a totally disabling respiratory or pulmonary impairment is a *separate inquiry* from whether he suffered from pneumoconiosis." *Id.* at *4 (citing 20 C.F.R. §§ 718.202(a), 718.204(b)(2)). The Board also found that the ALJ improperly focused on "whether [Yates] suffered from asthma caused or aggravated by coal dust—instead of whether a respiratory impairment disabled [him]," i.e., instead of whether Yates was totally disabled. *Id.* at *4 n.6.

The ALJ repeated the type of error the Board identified in *Yates* when considering Blankenship's claim. As was true in *Yates*, "whether Drs. Sargent and McSharry provided valid reasons for [their conclusions regarding pneumoconiosis and disability causation are]

13

not at issue in evaluating whether they provided documented and reasoned opinions with regard to the existence of [Blankenship's] totally disabling respiratory or pulmonary impairment." *Id.* at *5.[4]

Blankenship resists this conclusion. Although he concedes on briefing that "the ALJ mixed legal pneumoconiosis into his assessments," Resp. Br. 19, and "interspers[ed] [disability] causation in some of [his] points on total disability," Resp. Br. at 21, he nonetheless contends that the Court can still discern what the ALJ did and why he did it. He points to the ALJ's one justification for discrediting Drs. McSharry and Sargent relating to that inquiry: their medical opinions failed to address the exertional requirements of Blankenship's coal-mine employment. That argument fails.

Citing *Eagle v. Armco, Inc.*, Blankenship contends it is acceptable to discredit expert opinions when they fail to discuss the miner's exertional work requirements. In *Eagle*, the Court held: "[A] physician who asserts that a claimant is capable of performing assigned duties should state his knowledge of the physical efforts required and relate them to the miner's impairment." 943 F.2d 509, 512 (4th Cir. 1991) (quotation marks omitted). The physician at issue in *Eagle* admitted that he "had no idea what Eagle did in the mines." *Id.*

---

[4] Inexplicably, the Board summarily reached a different conclusion in this case than it did in *Yates*, dismissing Island Creek's argument that the ALJ had improperly transposed inquiries in a footnote with no substantive analysis. The Board explained in conclusory fashion that it could "discern what the ALJ did and why he did it with respect to each of these elements," and thus the ALJ's "duty of explanation is satisfied, notwithstanding the [] combined analysis." J.A. 9 n.5 (citing *Mays*, 176 F.3d at 762 n.10). We disagree. The Board was correct in *Yates*, and we conclude that the ALJ's decision lacked the requisite analysis that does not rely on evidence relating to pneumoconiosis or causation to assess whether Blankenship was totally disabled.

14

(cleaned up). Accordingly, the Court concluded that the physician's "opinion was critically flawed and [did] not amount to substantial evidence supporting the ALJ's denial of benefits." *Id.* at 513.

In the intervening years, the Court has refined when *Eagle* requires that physicians include as part of their assessment their knowledge of the exertional requirements of a miner's coal mine employment. For example, in *Lane v. Union Carbide Corp.*, Lane argued that "the ALJ improperly relied on [] medical opinions" because they did not include "the specific exertional requirements of Lane's employment," as required by *Eagle*. 105 F.3d 166, 172 (4th Cir. 1997). The Court rejected that argument, reasoning that a "miner's exertional work requirements . . . [are] not relevant *in a case where the physician finds no impairment at all*." *Id.* (emphasis added). We thus held that "an ALJ may rely on a physician's report that does not discuss the exertional requirements of the miner's work if the physician concludes that the miner suffers from no impairment at all." *Id.* at 172–73. Because Drs. McSharry and Sargent opined that Blankenship was not impaired, *Lane* controls and *Eagle*'s direction that a physician must consider exertional work requirements is inapplicable.[5]

_____

[5] Blankenship also quotes the ALJ's remaining reasons for discrediting the medical opinions of Drs. McSharry and Sargent—they overemphasized the non-qualifying results of the PFTs and ABGSs—but fails to explain how it relates to the total disability inquiry, i.e., whether Blankenship can perform his coal-mine employment and comparable work. We discern no relation between that reason and the total disability inquiry. Indeed, the ALJ's decision to discredit the findings of Drs. McSharry and Sargent based on their emphasis on the non-qualifying PFTs and ABGSs makes little sense. The ALJ himself found those tests unpersuasive as well, observing that Blankenship's lone qualifying ABGS and non-qualifying PFTs were both independently insufficient to establish total disability. (Continued)

15

At bottom, none of the ALJ's discussion regarding pneumoconiosis or disability causation bore on the total disability inquiry. Thus, he erred in discrediting Dr. McSharry's and Dr. Sargent's findings that Blankenship was not totally disabled based in part on their findings regarding the presence of pneumoconiosis and disability causation. Consequently, we cannot determine what the ALJ concluded with respect to total disability.[6]

But our inquiry does not end here. "Administrative adjudications are subject to the same harmless error rule that generally applies to civil cases." *Addison*, 831 F.3d at 253. "The burden to demonstrate prejudicial error is on . . . the party challenging the agency action." *Id.* However, "a legal error is only harmless in a black lung case if the outcome is foreordained." *Am. Energy, LLC v. DOWCP*, 106 F.4th 319, 334 (4th Cir. 2024) (cleaned up).

Here, the burden is on Island Creek to demonstrate prejudicial error. As their briefing indicates, the ALJ's findings as to discrete elements—the presence of pneumoconiosis and disability causation—improperly pervaded the separate inquiry as to whether Blankenship was totally disabled. The ALJ may have come to the same conclusion if he had undertaken the correct inquiry for total disability. "But we cannot be sure." *Id.* at

---

Given the ALJ's agreement that those tests did not establish total disability, his decision to discredit opinions that also pointed to those same tests as a reason for not finding total disability is unconvincing.

[6] Island Creek also argues that the ALJ improperly substituted his lay opinion for the medical opinions of Drs. McSharry and Sargent by finding that they overemphasized the non-qualifying PFTs and ABGSs. Because we grant Island Creek's petition for review, vacate, and remand based on the ALJ's failure to adequately analyze total disability and explain his decision to credit medical opinions, we do not reach this argument.

16

334. Thus, "[t]he ALJ's legal error . . . fatally undermines his award of benefits based on" the fifteen-year presumption. *Id.*

We hold that the ALJ erred in transposing the pneumoconiosis and disability causation analyses into the total disability analysis. Accordingly, we grant Island Creek's petition for review, vacate the Board's decision, and remand for proceedings consistent with this opinion.[7]

### B.

Next, Island Creek contends that the ALJ failed to adequately explain the rationale for placing greater evidentiary weight on the medical opinions of Drs. Nader and Green than on those of Drs. McSharry and Sargent. The Board held that the ALJ "fully explained his basis" for that finding, but we cannot find that explanation. J.A. 11. In giving greater weight to the medical opinions of Drs. Nader and Green on the issue of total disability, the ALJ apparently relied solely on his reasons for giving less weight to the medical opinions of Drs. McSharry and Sargent. As a result, the ALJ failed to provide any reasons specific to the medical opinions of Drs. Nader and Green to credit those opinions. That failure violates his duty of explanation under the APA and separately warrants granting the petition for review.

---

[7] Because we find that the ALJ erred in applying the total disability inquiry, the ALJ necessarily erred in applying the fifteen-year presumption based on his finding of total disability. As a result, we do not address Island Creek's challenge to the ALJ's finding that it failed to rebut that presumption.

17

As explained above, under the APA, the ALJ's duty of explanation is satisfied "if a reviewing court can discern what the ALJ did and why []he did it." *Harman Mining Co.*, 678 F.3d at 316 (cleaned up). As relevant here, to comport with the duty of explanation, an ALJ must "adequately explain why he credited certain evidence and discredited other evidence." *Addison*, 831 F.3d at 253 (citation omitted).

In evaluating total disability, the ALJ summarized the medical opinions of Drs. Nader, Green, McSharry, and Sargent. Beyond those summaries, the ALJ provided essentially no explanation for his analysis to find that the medical opinions of Drs. Nader and Green should be accorded greater weight than those of Drs. McSharry and Sargent. Indeed, he provided only one reason for that finding: Drs. McSharry and Sargent "d[id] not discuss the demands of [] Blankenship's usual coal-mine employment, and d[id] not directly consider whether his pulmonary or respiratory impairment would prevent him from meeting those demands." J.A. 70. The ALJ reasoned: "Dr. Green and Dr. Nader, by contrast, do." *Id.* But in so doing, the ALJ did not discuss where Drs. Nader and Green discussed Blankenship's exertional work requirements or how their opinions supported a finding that he had carried his burden of proof as to a finding of total disability. In other words, the ALJ failed to explain specifically what features of Drs. Nader and Green's opinions made them entitled to greater weight or, in turn, supported a total disability finding.

The ALJ's limited explanation conflicts with the statutory mandate that an ALJ consider all relevant evidence and explain his rationale. *Milburn Colliery Co.*, 138 F.3d at 533–34 (finding that the "ALJ failed to adequately explain why he credited certain

18

evidence and discredited certain other evidence" when he "cited no valid reasons for crediting [one doctor's] opinion over [another doctor's opinion]"). As previously discussed, the ALJ's articulated reason for discrediting the medical opinions of Drs. McSharry and Sargent—that they failed to discuss Blankenship's exertional work requirements in finding that he was not totally disabled—does not comport with the APA or the record. As explained above, our precedent does not support a requirement for medical experts to discuss exertional requirements when their medical opinions conclude that the miner is not impaired, *see Lane*, 105 F.3d at 172, and those doctors did in fact discuss Blankenship's job requirements in forming their opinions. The ALJ erred in deciding to the contrary.

And the ALJ's summaries of the medical opinions, standing alone, are insufficient to satisfy his duty of explanation under the APA. In *Bill Branch Coal Corp. v. Sparks*, we held that an ALJ "failed to explain sufficiently his reasoning for discounting [a] [medical] opinion[.]" 213 F.3d 186, 191 (4th Cir. 2000). The Court noted that the ALJ "briefly recit[ed] [the] medical opinion" before "reject[ing] this evidence, stating only that he found [the] report 'unconvincing.'" *Id.* The Tenth Circuit has similarly held that an ALJ violates the APA's duty of explanation by relying "almost entirely [on] summaries of the medical evidence and block quotations from the physicians' reports." *Energy W. Mining Co. v. Est. of Blackburn*, 857 F.3d 817, 823 (10th Cir. 2017). In line with that case law, the ALJ's summaries of the medical opinions of Drs. Nader and Green did not satisfy his duty of explanation. In short, the ALJ never explained how or why the opinions of Drs. Nader and Green finding Blankenship totally disabled were creditable on their own merits.

19

Of note, the Board also recognized the ALJ's failure to explain his decision to credit particular medical opinions in *Yates*. The Board held that the same ALJ failed to "satisfy the explanatory requirements" of the APA in crediting two physicians' opinions "without adequately explaining why they are more credible than the explanations provided by Drs. McSharry and Sargent." *Yates*, 2023 WL 2182665, at *3. The Board noted that the ALJ "did not provide any rationale at all to support his conclusion" as to the most credible medical opinion. *Id.* As in *Yates*, this ALJ's failure to explain his decision to credit Drs. Nader and Green violates the APA's duty of explanation.

Based on the ALJ's improper reasons for crediting the medical opinions of Drs. Nader and Green, we find that "[t]he ALJ's crediting of [those] opinions . . . thus fails to satisfy the explanatory requirements of the [APA]."[8] *Id.* at *3.

Turning to whether that error was harmless, Island Creek argues that certain evidence in the record contradicted Dr. Nader's and Dr. Green's findings that Blankenship

---

[8] In light of our finding that the ALJ failed to adequately explain his decision to credit Drs. Nader and Green, Island Creek's argument that the ALJ improperly shifted the total disability burden is on point. To apply the fifteen-year presumption, the ALJ must find that Blankenship proved his total disability. *See* 20 C.F.R. § 718.305(b)(1)(iii). Because the ALJ inadequately explained his decision to credit the medical opinions of Drs. Nader and Green—on which he relied in finding Blankenship totally disabled—the ALJ improperly shifted the burden to Island Creek to disprove total disability.

We also note that, in rejecting this argument, the Board pointed to the ALJ's conclusion that the medical opinions of Drs. Nader and Green were "well-reasoned and well-supported." J.A. 11. But as discussed earlier, the ALJ never explained why he reached that conclusion. It is not enough for the ALJ to conclude that certain opinions are entitled to greater weight; he must explain that conclusion. And upon a close examination of his reasons for that conclusion (or lack thereof) it is apparent that the ALJ impermissibly shifted the burden to Island Creek to disprove total disability.

20

was totally disabled. According to Island Creek, the ALJ's limited analysis precludes the Court from evaluating whether the ALJ confronted such evidence. We agree.

As explained above, the harmless error rule "requires a showing of prejudice." *Addison*, 831 F.3d at 253. In evaluating whether an error is harmless, we consider "the likelihood that the result would have been different." *Id.* at 253–54 (citation omitted). This is not a case where the ALJ failed to explain his reliance on evidence that "was merely cumulative or concerned an uncontested point." *Id.* at 254. Rather, the ALJ's decision to credit the medical opinions of Drs. Nader and Green over those of Drs. McSharry and Sargent was "unquestionably probative of the central issue in dispute": whether Blankenship proved total disability based on medical opinion evidence. *Id.* At bottom, the ALJ provided no permissible reason for placing greater evidentiary weight on the medical opinions of Drs. Nader and Green. We are thus left only to speculate whether an adequate analysis and record evidence would lead the ALJ to the same conclusion. Island Creek has therefore shown prejudicial error.

In sum, we find that the ALJ credited the medical opinions of Drs. Nader and Green "for the wrong reason," i.e., that their medical opinions included Blankenship's exertional requirements while the medical opinions of Drs. McSharry and Sargent omitted those requirements. *Addison*, 831 F.3d at 257 (citation omitted). And when we remove that improper reason for crediting their medical opinions, we are left with the ALJ crediting them "for no reason" at all. *Addison*, 831 F.3d at 257 (citation omitted). "[R]ather than attempting to, metaphorically speaking, unscramble the egg," we find that the appropriate

21

approach is to remand to the Board with direction to return Blankenship's case to the ALJ to reevaluate his claim in light of this opinion. *Yates*, 2023 WL 2182665, at *4 n.6.[9]

V.

For the reasons discussed, we grant Island Creek's petition for review, vacate the Board's decision, and remand with instructions for the Board to return Blankenship's case to the ALJ for reconsideration consistent with this opinion.[10]

*PETITION FOR REVIEW GRANTED;*
*ORDER VACATED AND REMANDED*

---

[9] Island Creek also challenges the ALJ's failure to consider certain evidence contrary to the medical opinions of Drs. Nader and Green. On remand, the ALJ may yet consider this evidence and explain his conclusions. Thus, we do not reach those arguments.

[10] An ALJ's repeated errors may suggest that the "claim requires a fresh look at the evidence," and thus warrant directing the Board to remand to a new ALJ. *Milburn Colliery Co.*, 138 F.3d at 537. But Island Creek has not asked for that remedy, so we do not address it.

22