**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-1989**

———————

CONSOLIDATION COAL COMPANY,

        Petitioner,

    v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; JOSEPH MURPHY, JR.

        Respondents.

———————

On Petition for Review of an Order of the Benefits Review Board. (22-0196 BLA)

———————

Submitted: December 3, 2024                      Decided: June 16, 2025

———————

Before RICHARDSON and BENJAMIN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

———————

Petition for review denied by unpublished per curiam opinion.

———————

**ON BRIEF:** William S. Mattingly, Jennifer Horan, JACKSON KELLY PLLC, Lexington, Kentucky, for Petitioner. Brad A. Austin, WOLFE WILLIAMS & AUSTIN, Norton, Virginia, for Respondent Joseph Murphy, Jr.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Consolidation Coal Company ("Employer") petitions this court for review of the Benefits Review Board's ("BRB") order affirming the Administrative Law Judge's ("ALJ") award of benefits to Joseph Murphy ("Claimant") under the Black Lung Benefits Act, 30 U.S.C. §§ 901-944. Employer argues that the ALJ erred by failing to sufficiently explain her decision finding Claimant totally disabled from a respiratory or pulmonary impairment. We deny the petition for review.

## I.

### A.

In order to establish eligibility for black lung benefits, a miner is required to show: "(1) that he has pneumoconiosis, in either its clinical or legal form; (2) that the pneumoconiosis arose out of coal mine employment; (3) that he is totally disabled by a pulmonary or respiratory impairment; and (4) that his pneumoconiosis is a substantially contributing cause of his total disability." *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 133 (4th Cir. 2015) (cleaned up).[1]

---

[1] Clinical pneumoconiosis is defined, in relevant part, as "those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1). Legal pneumoconiosis is defined as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment," which includes "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2). "Legal pneumoconiosis does not require evidence of particles in the miner's lungs, but the miner must still show that his lung disease (such as chronic obstructive pulmonary disease, or 'COPD') arose out of coal mine employment." *American Energy, LLC v. Dir., OWCP*, 106 F.4th 319, 325 (4th Cir. 2024). (Continued)

2

If the miner was employed in underground coal mines or in substantially similar conditions for at least 15 years, his chest x-ray is interpreted as negative for complicated pneumoconiosis, and he has a totally disabling respiratory or pulmonary impairment, he is entitled to a rebuttable presumption that he is totally disabled due to his pneumoconiosis. *See* 20 C.F.R. § 718.305(b)(1). Therefore, to obtain the benefit of the presumption, the miner must first "come forward with evidence to establish the third element of his claim: that he has a totally disabling respiratory or pulmonary condition." *Island Creek Coal Co. v. Blankenship*, 123 F.4th 684, 688 (4th Cir. 2024). Specifically, the miner must prove that the "pulmonary or respiratory impairment . . ., standing alone, prevents or prevented the miner . . . [f]rom performing his . . . usual coal mine work" and "comparable" work. 20 C.F.R. § 718.204(b)(1); *see Island Creek*, 123 F.4th at 688.

In the absence of contrary probative evidence, total disability shall be established if there is evidence meeting any of the following standards: (1) qualifying pulmonary function tests ("PFTs"); (2) qualifying arterial blood-gas studies ("ABGSs"); (3) evidence that the miner has pneumoconiosis and suffers from cor pulmonale with right-sided congestive heart failure; or (4) a physician's conclusion, based upon reasoned medical judgment and medically acceptable clinical and laboratory diagnostic techniques, that the miner's respiratory or pulmonary condition prevents the miner from engaging in his usual coal mine work and comparable work. *See* 20 C.F.R. § 718.204(b)(2)(i)-(iv).

---

A miner who establishes "legal pneumoconiosis necessarily satisfies th[e] second element" because "by definition, legal pneumoconiosis arises out of coal mine employment." *Id.*

3

Once the miner establishes the requisite minimum 15 years of qualifying coal mine employment *and* that he has a totally disabling respiratory or pulmonary impairment, the miner presumptively satisfies the remaining three elements of his claim. *See Island Creek*, 123 F.4th at 688. The burden then shifts to the employer to rebut the presumption by establishing either "(1) that the miner does not have legal and clinical pneumoconiosis arising from coal mine employment, or (2) that no part of the miner's respiratory or pulmonary impairment was caused by pneumoconiosis." *Id.*; *see* 20 C.F.R. § 718.305(d)(1).

## B.

Claimant filed this black lung claim in September of 2017.[2] Claimant was born in November 1942 and he last worked in the mines in 2000. His last coal mine employment required moderate to heavy labor. He is a non-smoker, but he is clinically obese. The parties stipulated that Claimant had 27 years of qualifying coal mine employment and was entitled to the presumption of total disability due to pneumoconiosis if he proved total disability from a pulmonary or respiratory impairment.

Claimant's PFTs were nonqualifying and he presented no evidence of cor pulmonale with right-sided congestive heart failure. Accordingly, the ALJ turned to the question of

---

[2] Claimant filed a prior claim for benefits in May of 2014, which was denied by the district director because he failed to establish that he had a totally disabling pulmonary or respiratory impairment. Because this is a subsequent claim for benefits, Claimant was required to show that "one of the applicable conditions of entitlement . . . has changed since the date upon which the order denying the prior claim became final." 20 C.F.R. § 725.309(c). Because the ALJ concluded that Claimant has now established total disability, an element not established in his prior claim, he satisfied the § 725.309(c) requirement.

4

whether Claimant had proven total disability based upon his ABGSs and/or by physician opinion evidence.

Arterial blood-gas studies "are performed to detect an impairment in the process of alveolar gas exchange. This defect will manifest itself primarily as a fall in arterial oxygen tension either at rest or during exercise." 20 C.F.R. § 718.105(a). The regulations provide that ABGSs "shall initially be administered at rest and in a sitting position. If the results of the blood-gas test at rest do not satisfy the [regulatory] requirements. . . , an exercise blood-gas test shall be offered to the miner unless medically contraindicated." 20 C.F.R. § 718.105(b).

Dr. Antoine Habre performed the initial, Department-sponsored pulmonary evaluation of Claimant on October 26, 2017, and administered resting and exercise ABGSs. Both ABGSs yielded qualifying results. Claimant had ABGSs performed on four additional occasions thereafter. An ABGS performed on October 16, 2018, was non-qualifying; no exercise ABGS was administered. Resting ABGSs administered on February 4, 2020, and October 14, 2020, yielded qualifying results. No exercise ABGS was conducted on either date. A resting ABGS and an exercise ABGS was administered between these two dates, specifically on June 25, 2020, and produced non-qualifying results.

Because they were more recent, the ALJ accorded greater weight to the three ABGSs performed in 2020. As noted above, the ABGSs administered in February 2020 and October 2020 were qualifying. The ABGSs administered in June 2020 produced non-qualifying results. After considering and weighing all of the ABGSs, the ALJ found that

5

the preponderance of the ABGSs supported a finding of total disability and that the ABGS "evidence, considered alone, [was] sufficient to establish that Claimant is totally disabled due to a pulmonary or respiratory impairment under § 718.205(b)(2)(ii)." J.A. 218.

In doing so, the ALJ specifically addressed and rejected Employer's argument that she should credit the June 2020 exercise ABGS over the February 2020 and October 2020 resting ABGSs because an exercise test would be "more probative of the pulmonary system's response to exercise." *Id.* Although the ALJ recognized that an exercise ABGS would be "probative of a miner's ability to perform exertional job requirements," the ALJ rejected Employer's argument that she was "required to credit Claimant's exercise test results over his resting test results." *Id.* The ALJ pointed out that the black lung regulations recognize "that a gas exchange impairment may manifest 'either at rest or during exercise'" and "only require the administration of an exercise [ABGS] when a resting [ABGS] is non-qualifying." *Id.* (cleaned up). Accordingly, "the regulations clearly reflect that both resting and exercise [ABGSs] are probative of whether Claimant suffers from a totally disabling pulmonary or respiratory impairment." *Id.* The ALJ additionally noted that, although she gave the three most recent ABGSs greater probative weight than the ABGSs performed in October 2017 and October 2018, the exercise ABGS performed in October 2017 was also qualifying and, therefore, provided some additional support for her total disability determination.

The ALJ next considered the question of whether the medical opinion evidence established total disability due to a pulmonary or respiratory impairment under 20 C.F.R. § 718.204(b)(2)(iv).

6

As noted above, Dr. Habre performed the Department-sponsored pulmonary evaluation of Claimant on October 26, 2017. He concluded that Claimant suffered from a totally disabling pulmonary impairment and attributed the impairment at least in part to his coal dust exposure. Dr. Michael Green examined Claimant on February 4, 2020, and also found that Claimant was totally disabled. Although acknowledging that Claimant's obesity contributed to his total disability, Claimant's coal dust exposure could not be eliminated as an additional, significant contributing and aggravating factor. Dr. Vishal Raj, who evaluated Claimant on October 14, 2020, also concluded that Claimant suffered from a totally disabling pulmonary impairment, which he attributed to both his obesity and to chronic bronchitis caused by his exposure to coal mine dust.

The remaining two evaluating physicians came to contrary conclusions. Dr. Gregory Fino examined Claimant on October 16, 2018. Dr. Fino was of the view that Claimant was not totally disabled, but stated that, even if Claimant was totally disabled, he would not attribute it to coal dust exposure. Dr. Mohammed Ranavaya evaluated Claimant on June 25, 2020. Dr. Ranavaya was of the opinion that Claimant was totally disabled but that his disability was not causally connected to his coal mine employment. He believed Claimant's impairment was solely due to his obesity and obesity-related issues such as hypoventilation, atelectasis, and sleep apnea.

The ALJ exhaustively discussed all of the physician opinion evidence and, for varying reasons, found that none merited full probative weight on the issue of respiratory or pulmonary disability.

7

The ALJ found that the opinions of Drs. Raj and Ranavaya were highly problematic and merited very little probative weight. Specifically, Dr. Raj's opinion was highly equivocal and inconclusive on the pertinent issues. Dr. Ranavaya conflated the issue of whether Claimant was totally disabled with the issue of what caused his disability, and he had an inadequate understanding of the exertional requirements of Claimant's coal mine employment. Hence, his opinion was also found to be vague and inconclusive.

The ALJ found that the opinions of Drs. Habre and Green merited reduced probative weight because neither physician had reviewed the more recent medical evidence. It was also unclear whether Dr. Habre fully understood the exertional requirements of Claimant's usual coal mine employment. Dr. Fino's opinion also merited reduced probative weight because it was found to be not well-reasoned or definitive. Considering all of the opinion evidence, the ALJ determined that the opinions of Drs. Habre and Green nonetheless outweighed the opinion of Dr. Fino. Specifically, the opinions of Drs. Habre and Green corroborated one another and, unlike the opinion of Dr. Fino, were in accord with the weight of the ABGSs. The ALJ found that "the weight of the physician opinion evidence, considered alone, supports a finding that Claimant is suffering from a totally disabling pulmonary or respiratory impairment pursuant to 718.204(b)(2)(iv)," but that it only provided "some support toward that finding" due to the "problematic nature of all of the physician opinions." J.A. 229.

Having carefully considered the results of the ABGSs and the appropriate weight of the medical opinions, the ALJ found that the ABGSs established total disability under 20 C.F.R. § 718.204(b)(2)(ii), and that the ABGSs, when considered in conjunction with the

8

physicians' opinions, further supported the finding that Claimant had met his burden of proving total disability due to a pulmonary or respiratory impairment. Claimant was therefore entitled to the rebuttable presumption that he was totally disabled due to pneumoconiosis, *see* 20 C.F.R. § 718.305(b)(1), shifting the burden to Employer to rebut the presumption with evidence that Claimant did not have legal or clinical pneumoconiosis arising from his coal mine employment, or that no part of his respiratory or pulmonary impairment was caused by pneumoconiosis, *see* 20 C.F.R. § 718.305(d)(1).

As to Employer's burden, the ALJ found that Employer had rebutted clinical pneumoconiosis,[3] but had failed to rebut legal pneumoconiosis. Although the medical evidence indicated that Claimant's impairment was attributable in part to his obesity and obesity-related conditions, the ALJ found that Dr. Fino's and Dr. Ranavaya's opinions were insufficient to establish that Claimant's impairment was not also "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b). The Board affirmed and this petition for review followed.

## II.

"In black lung cases, our review of the Board's order is governed by the same standard the Board applies when reviewing an ALJ's decision." *American Energy*, 106 F.4th at 330 (cleaned up). "We review the findings of the ALJ, as affirmed by the Board, to determine if they are supported by substantial evidence and in accordance with the law."

---

[3] Claimant had eight chest x-rays taken from July 22, 2014, to October 14, 2020. None of the physicians concluded that there were radiographic findings consistent with clinical coal workers' pneumoconiosis.

*Id.* (cleaned up). "[W]e do not undertake to reweigh contradictory medical evidence, make credibility determinations, or substitute our judgment for that reached below." *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 252 (4th Cir. 2016). "[T]he duty to resolve conflicts in the evidence rests with the ALJ as the factfinder. And when conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled or has pneumoconiosis, the responsibility for that decision falls on the ALJ." *Id.*

"That said, our deference to an ALJ's factual findings is not unlimited." *Id.* To determine whether this standard has been met, we must also consider whether the ALJ has "conduct[ed] an appropriate analysis of the evidence to support [her] conclusion." *Id.* (cleaned up). If the "ALJ has incorrectly weighed the evidence or failed to account for relevant record evidence, deference is not warranted and remand is frequently required." *Id.* at 253. But the "ALJ's duty of explanation is not intended to be a mandate for administrative verbosity. If we understand what the ALJ did and why [she] did it, we, and the APA, are satisfied." *Island Creek*, 123 F.4th at 691 (cleaned up).

## A.

Employer's petition for review presents a narrow issue. Employer acknowledges that Claimant had qualifying ABGSs and that the testing showed pulmonary or respiratory impairments suggestive of total disability. However, Employer argues that the ALJ failed to adequately explain why she rejected Employer's argument and evidence that the exercise ABGS conducted on June 25, 2020, was more probative of Claimant's disability than the resting ABGSs conducted on February 4, 2020 and October 14, 2020.

10

Employer presented this same argument, unsuccessfully, to the Board. The Board held that the ALJ had properly performed both a qualitative and quantitative analysis of the conflicting ABGSs and had adequately explained the basis for her resolution of the conflict. The Board also held that the ALJ was not required to credit the June 25, 2020, non-qualifying ABGS over the qualifying studies, and that she had adequately explained her decision not to do so. Accordingly, the Board held that her decision was supported by substantial evidence and was without legal error.

We agree. Faced with both qualifying and non-qualifying resting and exercise ABGSs, the ALJ correctly observed that the regulations permitted, but did not require, her to credit the June 25, 2020, non-qualifying exercise ABGS over the probative, qualifying resting ABGSs administered on February 4, 2020 and October 14, 2020, and the less probative, but still supportive, qualifying exercise ABGS administered on October 26, 2017. Having independently reviewed the evidence, we too "understand what the ALJ did and why [she] did it." *Island Creek*, 123 F.4th at 691 (cleaned up). As was clearly within her province to do, the ALJ considered all of the evidence—the qualifying ABGSs alongside the opinions of the medical experts—and made the reasonable determination that the preponderance of the evidence supported a finding of total disability based upon Claimant's respiratory or pulmonary impairment. Accordingly, we too reject Employer's request for a remand. We hold that the ALJ's findings are supported by substantial evidence and are without legal error.

11

B.

Although Employer does not specifically challenge the ALJ's weighing of the medical opinion evidence, or her determination that the Employer failed to rebut the 20 C.F.R. § 718.305 presumption, Employer did request that, if we remand on the ABGS issue, we should also direct the ALJ to explain why she gave less credit to Dr. Ranavaya's qualifications because he, unlike the other four physicians, was not a Board-certified pulmonologist. The Board rejected this challenge on appeal, holding that the alleged error was harmless in light of the ALJ's additional bases for discounting Dr. Ranavaya's opinion.

As noted above, we decline to remand on the issue of the ABGSs. But to the extent Employer may have sought to present the ALJ's evaluation of Dr. Ranavaya's qualifications as a separate basis for remand, we also find no reversible error. As the Board observed, the ALJ did not give Dr. Ranavaya's opinion less weight solely because he was not a Board-certified pulmonologist. She also gave Dr. Ranavaya's opinion less weight because his opinion was vague and inconclusive, he conflated the issue of whether Claimant was totally disabled with the issue of the cause of his disability, he incorrectly described Claimant's usual coal mine employment as "mostly sedentary," instead of moderate to heavy, and he failed to explain why Claimant's extensive history of coal dust exposure was not a significant, contributing factor to his respiratory impairment.

III.

For the foregoing reasons, we conclude that the ALJ's decision is based upon substantial evidence and is without reversible error. Accordingly, we deny the petition for review. We dispense with oral argument because the facts and legal contentions are

12

adequately presented in the materials before this court and argument would not aid the decisional process.

*PETITION DENIED*