**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1789**

WILLIAMS MOUNTAIN COAL COMPANY,

        Petitioner,

      v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; DEWEY
LEE COMPTON,

        Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(07-0720-BLA)

Argued: March 25, 2009           Decided: May 27, 2009

Before MOTZ, TRAXLER, and SHEDD, Circuit Judges.

Petition denied by unpublished per curiam opinion.

**ARGUED:** William Steele Mattingly, JACKSON KELLY PLLC,
Morgantown, West Virginia, for Petitioner. Daniel H. Ennis,
WASHINGTON & LEE UNIVERSITY, Black Lung Clinic, School of Law,
Lexington, Virginia; Jeffrey Steven Goldberg, UNITED STATES
DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON
BRIEF:** Gregory F. Jacob, Solicitor of Labor, Rae Ellen Frank
James, Acting Associate Solicitor, Sean G. Bajkowski, Counsel
for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR,
Washington, D.C., for Federal Respondent. Timothy C.
MacDonnell, Mary Z. Natkin, WASHINGTON & LEE UNIVERSITY, Black

Lung Clinic, School of Law, Lexington, Virginia, for Respondent Dewey Lee Compton.

––––––––––––––

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this case brought under the Black Lung Benefits Act ("the Act"), see 30 U.S.C.A. §§ 901-944 (West 2007), Williams Mountain Coal Company ("the Employer") petitions for review of an order of the Benefits Review Board ("Board") affirming an administrative law judge's award of benefits. We deny the petition.

## I.

Dewey Compton worked in coal mining for approximately 32 years, beginning in 1964. His last year working in a mine was 1996, when he worked for the Employer as an electrician. He filed his first black lung claim in 1998. Compton was examined by several doctors in conjunction with this claim although only one, Dr. Donald Rasmussen, is relevant to this appeal.

Dr. Rasmussen first evaluated Compton in 1999 and determined that Compton's pneumoconiosis left him totally disabled. His finding of total disability was based on the moderate loss of respiratory function that Compton exhibited while exercising, combined with the difficult physical requirements of Compton's last coal mining job.

When the District Director awarded benefits, the Employer requested a formal hearing with an administrative law judge ("ALJ"). After this hearing took place on June 6, 2000, Judge

Robert Lesnick ("ALJ1") denied benefits. In so doing, he credited the opinions of other doctors who had considered clinical test results that Dr. Rasmussen had not reviewed. ALJ1 also observed that Dr. Rasmussen "appear[ed] to have slightly overstated the exertion requirements" of Compton's final coal mining job. J.A. 456. The Board affirmed the denial on appeal.

Compton filed a subsequent benefits claim in 2003. Based on new test results, Dr. Rasmussen found Compton's condition had worsened and found that Compton's resting arterial blood gas test results were within one mmHg of the federal standards for automatic qualification for total disability. Based on the new evidence, and the difficult physical requirements of Compton's last mining job, Dr. Rasmussen again found Compton to be totally disabled.

The Employer had two experts examine Compton. First, Dr. James R. Castle evaluated Compton on May 26, 2004. Based on Compton's blood gas results, Dr. Castle found that Compton was impaired but not totally disabled. Although he diagnosed clinical pneumoconiosis, Dr. Castle opined that Compton's coal mine dust exposure did not contribute to Compton's impairment, which Dr. Castle attributed to Compton's history of smoking. Dr. Robert J. Crisalli examined Compton on November 22, 2004. He concluded that Compton did not have pneumoconiosis at all but

4

rather that he suffered from tuberculosis. Dr. Crisalli also concluded that Compton was not totally disabled.

Compton also sought an opinion from Dr. Robert A. C. Cohen. After examining all of the medical evidence, Dr. Cohen determined that Compton was totally disabled. He based his opinion on the impairment in Compton's oxygen transfer and on the physical requirements of his last job. Dr. Cohen also agreed with Dr. Rasmussen and Dr. Castle that Compton had clinical pneumoconiosis arising out of coal mining employment.

Based on the new evidence, the District Director again awarded benefits, and the Employer again requested a hearing before an ALJ. On April 25, 2006, Judge Michael Lesniak ("ALJ2") held a formal hearing. After examining the evidence, ALJ2 also awarded benefits. On the issue of total disability, he credited the opinions of Drs. Rasmussen and Cohen over the opinions of Drs. Castle and Crisalli in concluding that Compton was totally disabled. The Board affirmed on appeal.

## II.

The Employer first argues that the Board erred in affirming the benefits award because, in light of the doctrine of issue preclusion, ALJ2 erred in reconsidering the physical requirements of Compton's last coal mine job found by ALJ1. We disagree.

5

As is relevant here, the Act provides benefits to coal miners who are totally disabled because of pneumoconiosis. See 30 U.S.C.A. 901(a). One way that a claimant can prove that he is totally disabled is by proving that his respiratory or pulmonary condition prevents him from engaging in his usual coal mine work or comparable work. See 20 C.F.R. § 718.204(b)(1) (2008). A miner's usual coal mine work is his most recent coal mining job. See Walker v. Director, 927 F.2d 181, 183 (4th Cir. 1991).

ALJ1 found Compton's last mining job required him to "lift items weighing about 40 to 50 pounds, but occasionally, he would lift items weighing 100 pounds or more." J.A. 446. He added that if "items were too heavy to carry they were lifted by a scoop." J.A. 446. In contrast, Dr. Rasmussen had stated in his 1999 report that Compton "carried tools weighing 50 to 70" pounds. J.A. 40. In the end, ALJ1 chose not to credit Dr. Rasmussen's opinion that Compton could not perform his usual coal mining work because Dr. Rasmussen had relied "upon isolated abnormal arterial blood gas studies, without considering the clinical test results obtained by other physicians." J.A. 456. ALJ1 also noted, though, that "Dr. Rasmussen appears to have slightly overstated the exertion requirements of [Compton's] last usual coal mine job." J.A. 456.

In considering Compton's subsequent benefits claim, ALJ2 recounted the evidence regarding Compton's work requirements before finding that the record supported Dr. Rasmussen's assessment that Claimant's usual coal mine job "involved heavy and some very heavy lifting." J.A. 504 (ALJ2's opinion). We note initially that even assuming that ALJ2 was required to accept ALJ1's conclusion that Dr. Rasmussen had slightly exaggerated Compton's job requirements in his 1999 opinion, we see no indication that ALJ2 did not accept it. His agreement with Dr. Rasmussen's assessment that Compton's last job "involved heavy and some very heavy lifting" does not foreclose the possibility that Dr. Rasmussen's 1999 account of the specific weight amounts that Compton was required to lift was indeed slightly exaggerated.

In any event, ALJ1's statement that Dr. Rasmussen's 1999 opinion appeared to slightly overstate the physical demands of Compton's job was not binding on ALJ2. The applicable Department of Labor ("DOL") regulation states that "[i]f the claimant demonstrates a change in one of the applicable conditions of entitlement, no findings made in connection with the prior claim, except those based on a party's failure to contest an issue . . ., shall be binding on any party in the adjudication of the subsequent claim." 20 C.F.R. § 725.309(d)(4) (2008). In this case, the denial of Compton's

7

initial claim rested on his failure to establish total disability. Utilizing Dr. Rasmussen's new medical report finding total disability based on new test results, Compton demonstrated a material change in one of the applicable conditions of entitlement, and therefore no findings ALJ1 made in connection with Compton's prior claim were binding on ALJ2. See 20 C.F.R. § 725.202(d) (2008) (including total disability as a condition of entitlement). And, to the extent that the Employer argues that ALJ2 should be bound by ALJ1's assessment because no facts had changed since the earlier decision, the Employer is simply incorrect. Dr. Rasmussen opined in 2003, based on a new medical examination and testing, that Compton's condition had worsened since he provided his prior opinion.

ALJ1's statement that Dr. Rasmussen appeared to have slightly overstated the requirements of Compton's job was also not binding on ALJ2 because it was not the sole basis for ALJ1's decision. "[H]oldings in the alternative, either of which independently would be sufficient to support the result, are not conclusive with respect to either issue standing alone." Lisa Lee Mines v. Director, 86 F.3d 1358, 1363 (4th Cir. 1996) (en banc) (internal quotation marks and alterations omitted). As the Board correctly found in its decision affirming ALJ1's denial of benefits, ALJ1 offered the statement in question only as an alternative basis for crediting the other doctors'

8

opinions over Dr. Rasmussen's. The primary basis was that Dr. Rasmussen had relied "upon isolated abnormal arterial blood gas studies, without considering the clinical test results obtained by other physicians." J.A. 456 (ALJ1's decision).

## III.

The Employer also argues that in light of ALJ1's decision not to credit Dr. Rasmussen's 1999 opinion, our decision in Consolidation Coal Co. v. Williams, 453 F.3d 609, 618 (4th Cir. 2006), obligated ALJ2 to treat Dr. Rasmussen's 2003 opinion, which the Employer maintains was not materially different from the 1999 opinion, as a misdiagnosis as a matter of law. We disagree.

Williams concerned 20 C.F.R. § 725.308(a) and our decision in Lisa Lee Mines. Section 725.308(a) provides in relevant part that

> [a] claim for benefits filed under this part by, or on behalf of, a miner shall be filed within three years after a medical determination of total disability due to pneumoconiosis which has been communicated to the miner or a person responsible for the care of the miner, or within three years after the date of enactment of the Black Lung Benefits Reform Act of 1977, whichever is later.

20 C.F.R. § 725.308(a) (2008). In Lisa Lee Mines, we held that finality concerns attaching to a prior denial of black lung benefits require that the legal conclusion underlying a prior

9

denial—that the miner was not eligible for benefits at that time—must be accepted when a miner makes a subsequent claim for benefits. See Lisa Lee Mines, 86 F.3d at 1361. For that reason, we held that a miner was not required to prove that he actually had not been entitled to benefits at the time of a prior denial in order to show that a material change in conditions had occurred since that time that entitled him to benefits. See id. at 1362-63; see also 20 C.F.R. § 725.309(d) (2008) (requiring denial of subsequent claims unless the claimant demonstrates a material change in conditions).

The claimant in Williams received his original diagnosis of pneumoconiosis in 1995 but lost his initial case in 1996. He later filed a second claim in 2001, which he won. Because the claimant had been medically diagnosed with totally disabling pneumoconiosis in 1995, the coal company argued on appeal to us that 20 C.F.R. § 725.308 barred the claimant from filing any claim more than three years after that diagnosis. We disagreed. Relying in part on Lisa Lee Mines, we held that any medical diagnosis that the miner had received at the time of the denial and that was inconsistent with the denial would be treated, for legal purposes, as a misdiagnosis, and thus would not trigger the statute of limitations. See Williams, 453 F.3d at 616. In so holding, we emphasized the remedial nature of the Act and the need to interpret it favorably to miners and noted the "chilling

10

effect" that would be created by adopting a contrary rule because some miners would be discouraged from seeking early diagnoses.  Id. at 618.

The Employer now argues that under Williams, Dr. Rasmussen's 1999 opinion must be treated as a misdiagnosis and therefore that his 2003 opinion, reaching the same result, must receive the same treatment.  We disagree.  Simply put, Dr. Rasmussen's 2003 diagnosis is a new opinion based on new evidence.  Thus, even were we to treat Dr. Rasmussen's 1999 opinion as a misdiagnosis for this purpose, his 2003 opinion would not receive the same treatment.


IV.

The Employer next argues that ALJ2 made two errors in weighing the doctors' medical opinions regarding total disability.  We disagree.

A.

In 2003, Dr. Rasmussen obtained $PO_2$ values from blood gas studies performed when Compton was sitting down (67), when he was standing on a treadmill (73), and when he was exercising lightly on the treadmill (67).  Based on the drop between the standing-resting results and the exercise values, Dr. Rasmussen diagnosed a moderate impairment in oxygen transfer during light exercise.  In discussing the other doctors' views of these

11

tests, ALJ2 noted that "Dr. Castle did not recognize that Dr. Rasmussen had two sets of resting results and therefore did not recognize the drop in values." J.A. 508. The Employer argues that that statement was erroneous because DOL regulations require resting blood gas studies initially to be administered while a claimant is sitting down. See 20 C.F.R. § 718.105(b) (2008) ("A blood-gas study shall initially be administered at rest and in a sitting position. If the results of the blood-gas test at rest do not satisfy the requirements of Appendix C to this part, an exercise blood-gas test shall be offered to the miner unless medically contraindicated."). We find no error in the statement.

Doctors are not required, in evaluating a black lung benefits claimant, to consider only the tests that the DOL requires. Rather, they may consider other medical tests that are "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 718.204(b)(2)(iv) (2008); see Walker, 927 F.2d at 184-85. Here, the ALJ specifically noted that Dr. Rasmussen initially administered the blood gas study to Compton while Compton was sitting down, in line with the applicable regulation. Nothing in the record suggests that Dr. Rasmussen's standing $PO_2$ test, even if not specifically sanctioned by the regulations, was not medically valid.

12

B.

The Employer also argues that ALJ2 used flawed reasoning in crediting Dr. Rasmussen's opinion that altitude and age had no significant effect on Compton's arterial blood gas study results.[1]  This argument makes reference to the presumptive medical criteria that can establish a miner's total disability when his arterial blood gas tests produce values equal to or less than the values in Appendix C of 21 C.F.R. Part 718.  The criteria vary depending upon the altitude of the location at which the study was conducted.  There is one set of criteria for all locations at or below 2,999 feet above sea level, one for altitudes of 3,000 to 5,999 feet, and one for altitudes of 6,000 feet or greater.  The criteria do not vary based on the age of the claimant.

Here, ALJ2 noted that both Dr. Castle and Dr. Crisalli opined that the fact that Dr. Rasmussen conducted his tests at a relatively high altitude caused Dr. Rasmussen's $PO_2$ results to be lower and, further, that Dr. Castle believed that Compton's advanced age had the same effect.[2]  ALJ2 also noted that "Dr.

_____

[1]  The DOL's Director of Workers' Compensation Programs participated in this appeal in support of the Employer's argument on this issue.

[2]  Dr. Rasmussen reported that the altitude of his testing site was about 2400 feet.  Dr. Castle did not indicate the specific altitude of his site, but indicated that it was less
(Continued)

13

Rasmussen was aware of those assertions and stated that while altitude and age have some effect on arterial blood gas study results, he did not believe the effect to be that much in this case," and that even considering those factors, the results were abnormal. J.A. 507. ALJ2 then concluded that, for the reasons we have discussed, "under the regulatory criteria, altitude ha[d] no effect in this case. Nor does age have any effect in this case, as the regulatory criteria do not include age in its criteria for arterial blood gas testing." J.A. 508 (emphasis added). He further found that Dr. Castle testified that he determines whether a miner is disabled simply by considering whether the numerical criteria are met. He also stated that while Dr. Crisalli recognized that the results of the test he himself administered were borderline low and while he was aware of the exertional requirements of Compton's job, he simply opined that Compton could perform his job without any further explanation of why that was the case. In the end, ALJ2 was persuaded by Dr. Rasmussen's reliance on the facts that the

---

than 2400 feet. Dr. Crisalli reported that the altitude of his site was about 600 feet. Compton was 69, 70, and 71 years old respectively, when he underwent the tests performed by Drs. Rasmussen, Castle, and Crisalli.

results here were close to the regulatory criteria and that Compton's job had particularly difficult physical requirements.

The Employer maintains that ALJ2 fallaciously reasoned that the fact that differences in the altitudes of the site locations and in Compton's age would not affect how close the values came to satisfying the criteria set out in Appendix C showed that Dr. Rasmussen was correct that altitude and age in fact did not substantially impact the test results. We do not read ALJ2's opinion as employing that reasoning. Rather, it appears that in considering the various experts' opinions regarding whether Compton was totally disabled, ALJ2 arrived at the eminently reasonable conclusion that Compton's test results were close to satisfying the Appendix C criteria, which apply regardless of the requirements of a particular miner's job. ALJ2 concluded that this fact, combined with the particularly difficult physical requirements of Compton's job, supported Dr. Rasmussen's opinion that Compton could not perform that job, as did Dr. Rasmussen's persuasive analysis and his experience in determining miners' disabilities. We find no error in that reasoning.[3]

---

[3] Even had ALJ2 made the error that the Employer alleges, it would have been harmless because there were several other reasons that ALJ2 credited Dr. Rasmussen's and Dr. Cohen's opinion that Compton was totally disabled over Dr. Castle's and Dr. Crisalli's contrary opinions. See Sahara Coal Co. v. Office (Continued)

15

V.

In sum, for the foregoing reasons, we deny the petition for review.

PETITION DENIED

---

of Workers' Comp. Programs, 946 F.2d 554, 558 (7th Cir. 1991) (holding harmless error doctrine applicable to judicial review of ALJ action in black lung cases).  As we have explained, ALJ2 was impressed with Rasmussen's experience and research concerning the use of arterial blood gas testing to determine total disability in coal miners.  ALJ2 also found that the preponderance of evidence indicates Compton suffers a diffusion capacity abnormality, and he noted that Dr. Castle was the only doctor who concluded that Compton's diffusion capacity study results were near normal.  He further found that Dr. Crisalli did not explain why the moderately reduced results in diffusion capacity and borderline low arterial blood gas results that Dr. Crisalli found would not have prevented Compton from performing heavy and very heavy labor.