**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 24-1126**

───────────

JUANITA CAVENDISH, on behalf of Jamie K. Cavendish,

        Petitioner,

        v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; LANDMARK CORPORATION; WEST VIRGINIA COAL WORKERS' PNEUMOCONIOSIS FUND,

        Respondents.

───────────

On Petition for Review of an Order of the Benefits Review Board. (22-0407 BLA; 2019-BLA-06000)

───────────

Argued: March 19, 2025                         Decided: June 13, 2025

───────────

Before KING, AGEE, and HARRIS, Circuit Judges.

───────────

Petition granted; order vacated and remanded by unpublished opinion. Judge Harris wrote the opinion, in which Judge King joined. Judge Agee wrote a dissenting opinion.

───────────

**ARGUED:** Annelise E. Burgess, WASHINGTON AND LEE UNIVERSITY SCHOOL OF LAW, Lexington, Virginia, for Petitioner. Christopher Michael Green, SPILMAN THOMAS & BATTLE, PLLC, Charleston, West Virginia, for Respondents. **ON BRIEF:** Timothy C. MacDonnell, Advanced Administrative Litigation Clinic, WASHINGTON AND LEE UNIVERSITY SCHOOL OF LAW, Lexington, Virginia, for Petitioner. Wesley A. Shumway, SPILMAN THOMAS & BATTLE, PLLC, Charleston, West

Virginia, for Respondents West Virginia Coal Workers' Pneumoconiosis Fund and Landmark Corporation.

_____

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Jamie Cavendish, a retired coal miner, filed a claim for benefits under the Black Lung Benefits Act. The Administrative Law Judge (ALJ) denied Cavendish's claim, finding that he had failed to establish that he was "totally disabled" under the Act. Specifically, the ALJ determined that Cavendish's former job as a bulldozer operator required "light" work only, and that Cavendish had not shown that his condition prevented him from performing such work.

We conclude that the ALJ failed to adequately explain her reasoning, and in particular, her reliance on one piece of evidence – an omission from Cavendish's claim form – over all other record evidence. Without a better understanding of the ALJ's rationale, we are unable to determine whether substantial evidence supports her conclusion. Accordingly, we grant the petition for review and remand for further consideration.

## I.

### A.

We begin with a quick review of the statutory and regulatory background. The Black Lung Benefits Act provides benefits to coal miners afflicted with pneumoconiosis, commonly known as black lung disease. 30 U.S.C. § 901 *et seq.* A miner is entitled to benefits if he proves by a preponderance of the evidence that: 1) he has pneumoconiosis; 2) the pneumoconiosis arose out of his coal mine employment; 3) he is totally disabled from performing his usual coal mining work; and 4) his pneumoconiosis is a contributing cause of his total disability. 20 C.F.R. §§ 718.201–.204 (2025). This appeal concerns only

3

the third requirement, and the ALJ's determination that Cavendish failed to establish total disability.

As relevant here, a coal miner is considered totally disabled if he "has a pulmonary or respiratory impairment which, standing alone, prevents or prevented the miner . . . [f]rom performing his or her usual coal mine work." § 718.204(b)(1)(i). One way a miner can establish total disability is through specific medical tests and results. § 718.204(b)(2)(i)-(iii). But another way – the one at issue here – is through the opinion of a "physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques," that "a miner's respiratory or pulmonary condition prevents . . . the miner from engaging in" his usual – meaning his most recent – coal mining job. § 718.204(b)(2)(iv); *see Williams Mountain Coal Co. v. Dir., OWCP*, 328 F. App'x 243, 246 (4th Cir. 2009).

Whether a coal miner can do his most recent job will often turn on how much physical exertion that job required. To assist, the Department of Labor published a Dictionary of Occupational Titles (DOT), with a "Strength Factor" classification system in which jobs are rated as requiring sedentary, light, medium, heavy, or very heavy exertion. *See* U.S. Dep't of Labor, App. C, § IV, Dictionary of Occupational Titles (4th ed. 1991), 1991 WL 688702 [hereinafter "DOT, App. C, § IV"]; *Dominion Coal Corp. v. Clark*, No. 22-1858, 2024 WL 1905047, at *3 n.2 (4th Cir. May 1, 2024) (explaining that an ALJ may take judicial notice of the DOT). Those ratings turn on two aspects of a job: first, how much force a person must exert when doing the job; and second, how often they exert a given level of force. DOT, App. C, § IV. For example, a job may be classified as "medium

4

work" either because it requires exerting a relatively low amount of force "frequently" or because it requires exerting a relatively higher amount of force only "occasionally." *Id.*

## B.

Cavendish worked as a coal miner in West Virginia.[1]  His most recent and last job as a coal miner, for Landmark Corporation, was as a bulldozer operator.  He retired from that job in 1997, after injuring his back while lifting a bulldozer battery.   Cavendish filed a claim for benefits in 2018, explaining that he was having trouble breathing, among other symptoms.   In 2019, the District Director of the Office of Workers' Compensation Programs issued a Proposed Decision and Order awarding benefits to Cavendish.  Landmark, however, objected to the Director's findings and requested a hearing before an ALJ.  Cavendish passed away in 2020, before a hearing could be held, and his wife Juanita Cavendish now pursues his claim on his behalf.

The ALJ denied Cavendish's claim for benefits, finding that he had failed to establish total disability by showing that he could no longer perform his job as a bulldozer operator.[2]   J.A. 44.   That ruling turned crucially on the ALJ's determination that

---

[1] Although the ALJ did not make a finding as to the length of Cavendish's coal mine employment, Cavendish alleges that he was a coal miner for 27 years, 16 of which he spent working in underground coal mines.  Miners who have who spent more than 15 years working underground have a particularly high risk of contracting pneumoconiosis. *See* 30 U.S.C. § 921(c)(4) (establishing rebuttal presumption that a miner with pneumoconiosis who has worked in underground coal mines for at least 15 years is totally disabled).

[2] The ALJ denied Cavendish's claim only on this ground and did not reach the other eligibility requirements – whether, for instance, Cavendish could establish he suffered from pneumoconiosis. *See* 20 C.F.R. §§ 718.201–.204.

5

Cavendish's job as a bulldozer operator had required only "light" physical work, as measured on the DOT scale. J.A. 13, 43–44. Whether or not Cavendish could perform a job with "higher rigor levels," that is, the medical evidence showed that his impairments did not make "light" work impossible. J.A. 43.

For the pivotal finding that Cavendish's job as a bulldozer operator involved no more than light work, the ALJ relied on one piece of evidence: a form Cavendish filed to apply for benefits, known as the CM-913 Form. One section of the form asked Cavendish to "[d]escribe the exertional requirements" of his bulldozer job, listing various activities – sitting, standing, lifting, carrying – and leaving a blank in which Cavendish could fill in how many "hours per day" or "times per day" he engaged in those activities. J.A. 159. Cavendish filled in the blank next to "sitting," indicating "up to 8" hours per day. *Id.* But he did not fill in the other blanks, including the blanks after "lifting" and "carrying." *Id.* Based on these purported "assertions" by Cavendish that "he did not lift or carry anything" on the job, the ALJ concluded that his job involved only "light" work. J.A. 12–13.

The ALJ relied on that finding to discredit the testimony of Cavendish's wife that Cavendish occasionally had to lift heavy batteries, finding it "inconsistent with [Cavendish's] own assertions." J.A. 12. She relied on it again to discount the DOT's classification of bulldozer operator as a "heavy" strength job, because that rating was inconsistent with the CM-913 Form's "description of the work performed." J.A. 13. And most important, the ALJ relied on her "light" work assessment to discredit both of Cavendish's medical experts, whose opinions that Cavendish could no longer work as a

6

bulldozer operator were premised, the ALJ explained, on higher exertional levels than the "light" work attested to on Cavendish's CM-913 Form.  J.A. 43.

By contrast, the ALJ gave both of Landmark's experts' opinions on total disability "significant weight" because they "did not overestimate the exertion levels involved." J.A. 43–44.  Then, having "found the two [Cavendish] doctors opining the existence of total disability entitled to little weight, and the two [Landmark doctors] opining no total disability entitled to significant weight," the ALJ determined that Cavendish had failed to prove, by a preponderance of evidence, that he was totally disabled.  J.A. 44.

The Benefits Review Board affirmed, concluding that the "ALJ permissibly found [Cavendish's] job as a dozer operator was performed at the light exertional level," J.A. 136, and thus permissibly credited the opinions of Landmark's experts over those of Cavendish's experts, J.A. 138.  Ms. Cavendish timely petitioned this court for review.

## II.

In a black lung case like this, we review "whether the findings of the ALJ, as affirmed by the Board, are supported by substantial evidence and in accordance with the law." *Jewell Smokeless Coal Corp. v. Street*, 42 F.3d 241, 243 (4th Cir. 1994).  Our job is not to reweigh the evidence, and we will not disturb an ALJ's factual finding "even if we disagree with it, provided the determination is supported by substantial evidence." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

At the same time, we must ensure that "all of the relevant evidence has been analyzed" by the ALJ and that the ALJ has "sufficiently explained [her] rationale in

7

crediting certain evidence." *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998). This is critical, because an ALJ's failure to explain her rationale may leave us "in the difficult position of attempting to review her factual findings" for substantial evidence "without any understanding of how she reached them." *Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 191 (4th Cir. 2000).

That is the position we find ourselves in here. It is unclear from the ALJ's opinion why she credited the CM-913 Form – specifically, what was *not* said on the form – over the other record evidence in the case. There may be reasons for this, but they were not explained by the ALJ, and we are left with enough questions that the proper course is to "ask the ALJ assigned to this case on remand to better explain her rationale." *Id.*

We start with the CM-913 Form that was so important to the ALJ's "light work" determination. As described above, that form asked Cavendish to fill in a series of blanks to "[d]escribe the exertional requirements" of his job:

**FOR SURFACE WORK**

5g. Where was the work being done? (examples: tipple, warehouse) Surface / Strip Mining

5h. What type of mining equipment did you/the miner use? (examples: dozer operator, haulage truck driver)
dozer operator
+ had to climb up into the dozer from ground to door was approx 8ft

6. Describe the exertional requirements of the most recent coal mine job.

Sitting for up to 8 hours per day.

Standing for _____ hours per day.

Crawling _____ (distance) for _____ hours per day.

Lifting _____ pounds _____ times per day.
(example: 25 pounds 10 times per day).

Lifting: _____ pounds _____ times per day.

Lifting _____ pounds _____ times per day.

Carrying _____ pounds _____ (distance) _____ times per day.
(example: 20 pounds 50 feet 15 times per day)

Carrying _____ pounds _____ (distance) _____ times per day.

Carrying _____ pounds _____ (distance) _____ times per day.

Form CM-913

J.A. 159. Because Cavendish did not fill in the blanks after "lifting" and "carrying" by indicating the relevant weight in "pounds" and a number of "times per day," the ALJ

8

understood him to be "asserting" that he simply sat for eight hours a day and "did not lift or carry anything." J.A. 12; *see id.* ("Based on [Cavendish's] assertions on his CM-913 form, I find that . . . [his job] did not involve significant lifting or carrying."). But as the petitioner points out, the form seems to ask only about activities performed *daily*, given that a claimant must list a number of "times per day" for each activity he identifies. If Cavendish lifted or carried heavy objects only *occasionally*, there would be nowhere for him to list that information – even though "occasional" exertions are just as relevant to a job's strength rating under the DOT's system as "frequent" exertions. DOT, App. C, § IV.

Nevertheless, the ALJ construed the omission of information about occasional lifting and carrying, from a form that appeared not to call for it, as an affirmative "assertion" that Cavendish's job did *not* involve any lifting or carrying of note. We might be less troubled by this reading if there were no record evidence that Cavendish actually did engage in some lifting and carrying on the job. But there is such evidence, and the ALJ did not explain why she chose an interpretation of the CM-913 Form, hardly compelled, that conflicted with that record evidence.

First, as the ALJ acknowledged, state workers' compensation records show that Cavendish injured his lower back while lifting a bulldozer battery on the job in 1997. The ALJ discounted the incident because those records did not establish the weight of the battery and indicated that Cavendish might have been helping a co-worker to lift it. J.A. 12. But common sense says a battery that takes two men to lift is likely to be heavy, and even without more information, the workers' compensation records suggest that Cavendish at least sometimes was required to lift heavy objects at work.

9

That would be consistent with the DOT's classification of "bulldozer operator" as a "heavy" exertion job, in part because the job occasionally requires equipment maintenance and repairs and the fastening of attachments to the equipment. U.S. Dep't of Labor, § 850.683-010, Dictionary of Occupational Titles (4th ed. 1991), 1991 WL 681906 [hereinafter "DOT § 850.683-010"]. That DOT information was before the ALJ, *see* J.A. 13, and the DOT is often used "as affirmative evidence" of the "exertional requirements of the miner's usual coal mine employment," especially when alternative methods are unavailable because (as here) the miner is deceased. *Island Creek Coal Co. v. Belt*, 835 F. App'x 8, 13 (6th Cir. 2020) (quoting *Onderko v. Dir., OWCP*, 14 Black Lung Rep. 1–2 (Ben. Rev. Bd. 1989)). Likewise, Dr. Sood, one of Cavendish's medical experts, drew on his experience treating coal-mine bulldozer operators to opine that the job entails periodic maintenance tasks that involve carrying heavy items like buckets of grease and oil and bulldozer batteries. J.A. 400, 697–98.

Finally, Juanita Cavendish's testimony was to the same effect. According to Ms. Cavendish, her husband "on occasion[]" engaged in heavy lifting of bulldozer batteries, taking out old batteries and putting in new ones. J.A. 774–75; *see* J.A. 12 (ALJ describing testimony). She also testified about the documented back injury Cavendish sustained while lifting a battery at work. Ms. Cavendish described the battery as weighing between 75 and 100 pounds, basing that figure on a doctor's report she had seen that was not included in the record.

The ALJ discounted or discredited all of that evidence because Cavendish did not include information about occasional lifting or carrying on a form that – at least on its face

10

– does not appear to ask for that information. *See, e.g.*, J.A. 12 (attributing documented back injury from lifting battery to occasional lifting of heavy batteries is "inconsistent with [Cavendish's] own assertions" on CM-913 Form); *id.* at 13 (same for DOT description of bulldozer operator job); *id.* at 43 (same for Dr. Sood's opinion).[3] The weighing of the evidence is the prerogative of the ALJ. But we are left unsure as to why, exactly, the ALJ found her interpretation of the CM-913 Form more credible than the other record evidence.

Our questions are compounded by the fact that the ALJ was not entirely consistent in her treatment of omissions on the CM-913 Form. As the DOT explains, a bulldozer operator generally moves both hand levers and foot pedals to maneuver and control the bulldozer and its tilt attachment, DOT § 850.683-010, which would, as the ALJ recognized, require the exertion of "some level of force." J.A. 13. Cavendish did not include that activity on his CM-913 Form, either, probably because – as with occasional lifting – there was no obvious place to put it. But here, the ALJ went beyond the form to find that Cavendish's "description of his job duties was *not* fully reflective of the exertion that position required," and adjusted her findings to account for the "foot control requirements"

---

[3] The ALJ also dismissed Ms. Cavendish's testimony on the weight of the battery involved in her husband's back injury as hearsay. But on review, the Board did not adopt that reasoning, explaining that ALJs may consider hearsay in administrative proceedings. Instead, in affirming the ALJ's decision to discredit Ms. Cavendish's statement, the Board relied only on the ALJ's alternative rationale: that her statement was inconsistent with the CM-913 Form. J.A. 137 n.8. And on appeal, we are to review "the findings of the ALJ, as affirmed by the [Board]." *Richardson v. Dir., Office of Workers' Compensation Programs*, 94 F.3d 164, 167 (4th Cir. 1996) (internal quotation marks and citation omitted).

11

of the position – though not, for reasons unexplained, the hand lever requirements.  J.A. 13 (emphasis added).

All told, we lack an understanding of the ALJ's rationale for crediting her interpretation of Cavendish's answers on the CM-913 Form above the other record evidence.  We know the ALJ recognized that Cavendish's CM-913 Form did not provide a fully comprehensive account of his job duties because she was prepared to add in the foot pedals.  At the same time, evidence that Cavendish's job also involved occasional lifting could not be credited because it was not described on the CM-913 Form.  There may well be an explanation for the ALJ's approach,[4] but it has not been provided to us, and without it we cannot perform a meaningful review for substantial evidence.  Under these circumstances, the proper disposition is to remand so that the ALJ can better explain her rationale.  *Bill Branch*, 213 F.3d at 191.

---

[4] For instance, Landmark's attorney suggested at oral argument that even if occasional lifting could not be indicated in the form's blanks, the ALJ expected Cavendish to use the margins to write in any such lifting, as he did to explain that he was required to climb in and out of the bulldozer.  *See* J.A. 159 (CM-913 Form).  Maybe so.  But Cavendish's climb in and out of the bulldozer was a daily activity, so Cavendish might reasonably have thought it appropriate to include that information – but not information about activities performed only occasionally – on a form that asked for "per day" accountings.  Or perhaps there is some other reason to believe that claimants regularly add descriptions of occasional activity to the CM-913 Form.  But the ALJ did not offer any such rationale, and we may not supply one for her.  *See Toler v. Eastern Associated Coal Co.*, 43 F.3d 109, 115 (4th Cir. 1995) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)) (explaining that we may not affirm on basis of what an ALJ "could have done").

12

**III.**

For the reasons given above, we grant Cavendish's petition for review, vacate the

decision of the Benefits Review Board, and direct the Board to remand the case to an ALJ

for further proceedings consistent with this opinion.

*PETITION FOR REVIEW GRANTED; ORDER VACATED AND REMANDED*

AGEE, Circuit Judge, dissenting:

In my view, the majority opinion fails to follow established precedent and inappropriately substitutes the judgment of the appellate court for that of the administrative law judge ("ALJ"). For that reason, I respectfully dissent.

## I.

At the outset, it is critical to understand our limited role in reviewing an ALJ's factual determinations. We review those findings, "as affirmed by the Board, to determine if they are supported by substantial evidence and in accordance with law." *Am. Energy, LLC v. DOWCP*, 106 F.4th 319, 330 (4th Cir. 2024) (cleaned up). Substantial evidence is more than a scintilla of evidence, but not by much; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To put it succinctly, "[i]n black lung cases, our review is highly deferential." *W. Va. CWP Fund v. DOWCP*, 880 F.3d 691, 697 (4th Cir. 2018). For that reason, "when conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled or has pneumoconiosis, the responsibility for that decision falls on the ALJ." *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 252 (4th Cir. 2016).

Relatedly, "as a condition to appellate review, under the APA, the ALJ has a duty to adequately explain why [s]he credited certain evidence and discredited other evidence." *Island Creek Coal Co. v. Blankenship*, 123 F.4th 684, 691 (4th Cir. 2024) (internal quotations omitted). "[A]n ALJ's duty of explanation is 'not intended to be a mandate for

14

administrative verbosity.'" *Id.* (quoting *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999)). Indeed, "[a]n adequate explanation . . . can be a succinct one, and the APA's duty of explanation is satisfied as long as a reviewing court can discern what the ALJ did and why she did it." *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 557 (4th Cir. 2013) (cleaned up). At bottom, unless we are left guessing as to an ALJ's reasoning, we should not disturb her decision. *Cf. Lane Hollow Coal Co. v. DOWCP*, 137 F.3d 799, 803 (4th Cir. 1998).

## II.

The majority concluded that "the ALJ failed to adequately explain her reasoning" and reliance on the CM-913 form, which leaves us "unable to determine whether substantial evidence supports [the ALJ's] conclusion." *Ante* at 3. It seems to me, though, that the ALJ satisfied her duty of explanation under the APA and the majority's conclusion to the contrary runs afoul of this Court's precedent.

In evaluating Cavendish's job duties, the ALJ carefully surveyed the record, including his CM-913 Form, his surviving spouse's testimony, and state workers' compensation records. Based on that survey, she concluded that Cavendish's job "did not involve significant lifting or carrying." J.A. 12. Critically, however, the ALJ did not leave us to speculate as to her reasoning; she explained that, based on the Dictionary of Occupational Titles' ("DOT") strength guidelines, Cavendish's self-reported job description in the CM-913 Form "seems to qualify as sedentary." J.A. 13. But given that he was also "required to climb onto and off of the approximately 8-foot dozer and operated

15

foot controls," the ALJ determined that Cavendish "exert[ed] some level of force that may not be properly accounted for by [him]."[5] *Id.* The ALJ thus compared Cavendish's job duties and the DOT's dozer operator definition, noting that the DOT's dozer description "includes equipment maintenance and fastening the attachments," neither of which is included in Cavendish's description of his duties nor appears elsewhere in the record. Balancing all of this information, the ALJ explained: "Based on [Cavendish's] description of [his] work and taking into consideration the climbing and foot control requirements of the position, I find that [his] last job involved light work." J.A. 13.

So, I can "discern what the ALJ did"—credited Cavendish's self-reported job duties over unsupported assertions in his surviving spouse's testimony and state workers' compensation records—as well as "why [s]he did it"—Cavendish's CM-913 Form and the DOT supported a finding of light work, and he failed to carry his burden to establish that his work was "heavy." *Island Creek Coal Co.*, 123 F.4th at 695 (cleaned up).

---

[5] The majority finds that the ALJ was inconsistent "in her treatment of omissions on the CM-913 Form," as she found that Cavendish operated foot controls despite his failure to note as much on the CM-913 Form but treated Cavendish's failure to fill in the blanks for standing, crawling, lifting, and carrying as binding assertions that those activities were not part of his job duties. *Ante* at 11. But it seems common sense that a dozer operator operates controls as part of his job. And the majority apparently endorses the use of such "common sense" inferences. *See ante* at 9. ("[C]ommon sense says a battery that takes two men to lift is likely to be heavy[.]"). Even assuming the ALJ treated these omissions inconsistently, she explained why she did so—the "determination that [Cavendish's] description of his job duties was not fully reflective of the exertion that position required is [] supported by the DOT," which provides that light work includes work that "requires sitting most of the time but entails pushing and/or pulling of arm or leg controls." J.A. 13 & n.6. That explanation is sufficient under the APA and our precedent.

Nonetheless, the majority concludes, in my view erroneously, that the ALJ "discounted or discredited all of th[e] evidence" that Cavendish occasionally lifted or carried objects as part of his job. *Ante* at 10–11. However, read in context, the ALJ acknowledged the possibility that Cavendish occasionally lifted or carried objects, but declined to classify his job as "heavy work" based on the absence of evidence related to the weight of such objects or the frequency with which he lifted them.

In reaching this conclusion, the order of the ALJ's reasoning is illustrative. First, she outlined Cavendish's surviving spouse's hearsay testimony that he lifted a battery "on occasions," as well as state workers' compensation records noting that Cavendish injured his back while lifting a battery. J.A. 12. The ALJ then concluded that, "[b]ased on [Cavendish's] assertions on his CM-913 form, I find that [his] last coal mine job as a dozer operator did not involve *significant* lifting or carrying." *Id.* (emphasis added); J.A. 13 (reiterating her finding that Cavendish's job required "no significant lifting or carrying requirement"). In the next sentence, the ALJ found the testimony that Cavendish lifted batteries "weigh[ing] approximately 75-100 pounds" to be "inconsistent with [Cavendish's] own assertions." J.A. 12. She further noted the absence of documentation as to the weight of the battery referenced in the state workers' compensation records and the lack of any description of frequency.

At that point, the ALJ ruled out a classification of sedentary work, and mentioned "light work" and "heavy work" as possible classifications. J.A. 13. Both classifications include occasional lifting—the distinguishing determination is the *weight* of that lifting. *See* U.S. Dep't of Labor, App. C, § IV, Dictionary of Occupational Titles (4th ed. 1991),

17

1991 WL 688702 [hereinafter "DOT, App. C, § IV"] (noting that light work includes exertion of "up to 20 pounds of force occasionally" and heavy work includes exertion of "50 to 100 pounds of force occasionally"). It thus makes sense that after noting the absence of evidence supporting the testimony that Cavendish occasionally lifted objects that were 75-100 pounds but recognizing the possibility of occasional lifting, the ALJ reasonably applied a "light work" classification.

For the foregoing reasons, the ALJ adequately explained her conclusion that Cavendish's most recent coal mine job constituted "light work." Charting a different course, the majority oversteps our precedent by imposing "a mandate for administrative verbosity" on the ALJ. *Island Creek Coal Co.*, 123 F.4th at 691 (internal quotations omitted). Because I think the APA is satisfied here, I would deny Cavendish's petition for review and affirm the BRB's decision upholding the ALJ's determination.

## III.

Satisfied that the ALJ adequately explained her reasoning, I would reach the question the majority did not: whether her conclusions are supported by substantial evidence. Cavendish challenges two of the ALJ's conclusions: his job required light work, and that the medical opinions of Drs. Anna Allen and Akshay Sood were entitled to little weight. In light of our highly deferential standard of review and the ALJ's express reliance on the record evidence, both conclusions are supported by substantial evidence.

First, as outlined above, in evaluating the exertional requirements of Cavendish's job, the ALJ considered extensive record evidence. The ALJ noted that, based on DOT

18

exertional guidelines, Cavendish's job "seem[ed] to qualify as sedentary" given his self-described job duties: sitting for 8 hours a day after climbing into the dozer, with no lifting or carrying requirement. J.A. 13. But in line with the DOT's definition of light work, which includes jobs that "require[] sitting most of the time but entail[] pushing and/or pulling of arm or leg controls," DOT, App. C, § IV, the ALJ also took "into consideration the climbing and foot control requirements" of his job, J.A. 13. She further contrasted Cavendish's job requirements with the DOT's enumerated job duties for a dozer operator, which are classified as heavy work. Because that description included duties that did not apply to Cavendish's job based on the record, such as "equipment maintenance and fastening the attachments to the lever arm of the equipment," she deemed his work as "requir[ing] significantly less strength than the usual dozer position as described by the DOT." J.A. 13. In sum, the ALJ's findings about Cavendish's job requirements are based on the record evidence and map neatly onto the DOT's definition of light work. Therefore, I find that her "light work" conclusion is supported by substantial evidence.

Second, the ALJ thoroughly outlined the medical opinions of Drs. Allen and Sood, and concluded that they were entitled to little weight because they overestimated Cavendish's exertional requirements.[6] As to Dr. Sood, the ALJ further noted that his

---

[6] DOWCP contends that Cavendish waived his argument that the ALJ improperly discredited the medical opinions of Drs. Allen and Sood based on their failure to address non-qualifying test results. I agree. Although he challenged the ALJ's decision to discredit those opinions based on their overestimation of exertional requirements, Cavendish failed to challenge their reliance on his test results. Because he did not preserve the argument, which the Board expressly acknowledged, J.A. 139 n.11, and the argument is squarely within the "agency's expertise," this argument is waived, *Toler v. E. Associated Coal Co.*, (Continued)

19

medical opinion was based on "his own hypothesis that [Cavendish's] exertional levels as a bulldozer operator were in fact much more rigorous than [Cavendish] characterized them in his claim for benefits." J.A. 43. The ALJ was understandably "unwilling to assume that [Cavendish] performed [certain] tasks simply based on Dr. Sood's hypothesis," and thus gave little weight to his conclusion as to Cavendish's exertional requirements. *Id.* Instead, the ALJ credited the medical opinions of Drs. Basheda and Spagnolo because they "did not overestimate the exertion levels." J.A. 43–44. Because the ALJ's conclusion that Cavendish's job was classified as "light work" is supported by substantial evidence, it follows that her decision to discredit medical opinions relying on unsupported hypotheses as to Cavendish's exertional requirements rather than the record is similarly supported.

With all of this in mind, I find that the ALJ's conclusion is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and is therefore entitled to deference. *Am. Energy, LLC*, 106 F.4th at 330 (quoting *Consol. Edison Co.*, 305 U.S. at 229).

## IV.

For the foregoing reasons, I would deny Cavendish's petition for review and affirm the BRB's order affirming the ALJ's decision. I respectfully dissent.

---

43 F.3d 109, 113 (4th Cir. 1995) (quoting *Thorn v. Itmann Coal Co.*, 3 F.3d 713, 717 (4th Cir. 1993)).